LÓPEZ ET AL., DEMANDANTES Y APELADOS, *v.* QUIÑONES,
DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en pleito sobre nulidad de escritura y otros extremos.

No. 2126.—Resuelto en abril 10, 1922.

Resuelto en reconsideración en junio 9, 1922.

NULIDAD DE SENTENCIA—EMPLAZAMIENTOS NULOS—JURISDICCIÓN.—Cuando en el
diligenciado de un emplazamiento que no hizo el marshal, ya que el sub-
marshal que lo practicó en este caso no suscribió la diligencia a nombre de
aquél, no expresa bajo juramento el diligenciante que no era parte en la ac-
ción y que era mayor de 18 años, el emplazamiento es nulo.

ID.—JURAMENTO DEL EMPLAZAMIENTO—DILIGENCIAMIENTO DE LA CITACIÓN.—En el
presente caso aparece después de la firma de la persona que diligenció el em-
plazamiento la siguiente expresión: "mayor de 18 años." *Se resolvió:* que
tal manifestación por no estar consignada en el cuerpo de la declaración ju-
rada no puede considerarse como formando parte de la misma.

ID.—EMPLAZAMIENTO—PRUEBA.—La prueba de que la persona que hizo el empla-
zamiento no era parte en la acción y era mayor de 18 años, cuyos requisitos
no contiene el diligenciamiento, corresponde a la parte demandada.

ID.—PRESCRIPCIÓN DEL DOMINIO—BUENA FE.—No puede alegar la buena fe que
es necesaria para adquirir el dominio por prescripción ordinaria quien adquirió
el inmueble mediante ejecución de sentencia dictada en un pleito en el cual la
corte no adquirió jurisdicción a causa de ser nulos los emplazamientos de los
demandados.

ID.—RECONVENCIÓN.—En un pleito que tiene por objeto anular la sentencia dictada
en otro seguido anteriormente por los ahora demandados contra los que son
ahora demandantes en cobro de parte del precio aplazado con hipoteca no
puede sostenerse que sea improcedente una reconvención de los ahora deman-

dados reclamando el importe de varios plazos de la misma deuda hipotecaria, sobre la misma finca.

ID.—COSTAS—TEMERIDAD.—Cuando los hechos no demuestran temeridad por parte del demandado, como sucede en este caso, la condena de costas es improcedente.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. J. Texidor.*

Abogados de los apelados: *Sres. J. R. F. Savage* y *José G. Torres.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

Eugenio Arturo López compró en el año 1894 una hacienda de café nombrada "Adjuntas," ahora "Paquita," radicada en Maricao y compuesta de 327 cuerdas de terreno por precio de 55,000 pesos de la moneda entonces circulante, de los cuales pagó 15,000 pesos y quedó adeudando los 40,000 restantes para ser pagados en diversos plazos, vencedero el último en enero de 1906, los que garantizó con hipoteca de la misma finca.

Muerto el deudor, Tomás Quiñones presentó demanda en juicio ordinario ante la Corte de Distrito de Mayagüez en el año 1905 contra sus hijos mayores de edad Antonio y Carmen Agustina y contra la viuda Francisca Comas por sí y como representante de otros dos hijos menores de edad nombrados Eugenio y Arturo Martín, como componentes de su sucesión, alegando los anteriores hechos y que había comprado algunos de los plazos hipotecarios de los cuales reclamó el pago de 9,600 dólares, equivalencia de 16,000 pesos de aquella moneda, que estaban vencidos y no satisfechos. En ese pleito recayó sentencia condenatoria en rebeldía de los demandados la que fué ejecutada vendiéndose los bienes hipotecados los que fueron adjudicados a Tomás Quiñones como el mejor postor en la subasta y a quien el marshal otorgó escritura de venta en 25 de agosto de 1905 que fué inscrita en el registro de la propiedad y en cuya fecha tomó posesión de los bienes vendidos.

Once años después, muerta la madre Francisca Comas,

los cuatro hijos de ese matrimonio Eugenio, Carmen Agustina, Antonio y Arturo López Comas, representado el último por ser menor de edad por su hermano Antonio como defensor suyo pero que durante el pleito alcanzó su mayor edad y como tal se personó en él, demandaron ante la Corte de Distrito de Mayagüez a Tomás Quiñones y a su esposa Antonia Quiñones solicitando del tribunal que declarase la nulidad del pleito seguido en 1905 por Tomás Quiñones contra la sucesión de Eugenio Arturo López, fundándose en lo siguiente: primero, que los emplazamientos que fueron librados para la citación de los demandados no contienen la prevención de que si no comparecían y contestaban la demanda el demandante obtendría fallo a su favor por la cantidad especificada en su demanda; segundo, que las diligencias de los emplazamientos que se libraron para la citación de los demandados, dos de ellos para cada uno de los hijos mayores de edad y el otro para la de la viuda por sí y por sus hijos menores de edad, no fueron hechas por el marshal sino por un tal Pedro Ma. Pabón, quien no hizo constar bajo su juramento que no era parte en el pleito y quien tampoco hizo constar en debida forma que era mayor de 18 años de edad; tercero, que los demandados menores de edad Eugenio y Arturo, que tenían 18 y 9 años de edad, respectivamente, no fueron citados personalmente; cuarto, que se dictó sentencia contra los demandados sin haber registrado su rebeldía el secretario; quinto, que los bienes fueron vendidos sin haber sido embargados.

Tomás Quiñones y su esposa contestaron esa demanda negando que existieran las nulidades alegadas por los demandantes y adujeron varias defensas y una reconvención. Celebrado el juicio recayó sentencia declarando la nulidad de los emplazamientos, de la sentencia y de las ventas hechas; ordenando que la inscripción de éstas hecha en el registro de la propiedad sea cancelada; que los demandados devuelvan la finca a los demandantes con sus frutos, cuya

cuantía por convenio de las partes se determinará después, y que los demandados paguen las costas.

Muerto el demandado Tomás Quiñones fué sustituído por su sucesión la que con la viuda Antonia Quiñones interpusieron este recurso de apelación contra dicha sentencia alegando contra ella catorce motivos de error, siendo los cinco primeros los siguientes:

"Primero: La corte cometió error al declarar nulos y sin ningún valor ni efecto los emplazamientos hechos en el pleito civil seguido por Tomás Quiñones contra la sucesión de Eugenio Arturo López y Quiñones, compuesta de Francisca Comas y Atresino, por sí y en representación de sus menores hijos Eugenio y Arturo Martín y sus otros hijos mayores de edad Antonio y Carmen Agustina López y Comas.

"Segundo: La corte cometió error al declarar asimisma nula y sin ningún valor y efecto la sentencia dictada en 31 de mayo de 1905 en el referido pleito, así como las ventas hechas por el marshal de dicha corte en 15 de agosto y 9 de septiembre de 1905, respectivamente, a favor de Tomás Quiñones, de la finca, casas y establecimientos, objeto de este litigio.

"Tercero: La corte cometió error al declarar igualmente nulo e inexistente el contrato de venta judicial de la citada finca, sus casas y establecimientos, otorgado por el marshal de dicha corte en nombre de la sucesión de Eugenio Arturo López y Quiñones a favor de Tomás Quiñones, el 21 de agosto de 1905, ante el notario José de Diego.

"Cuarto: La corte cometió error asimismo al decretar y ordenar la cancelación en el Registro de la Propiedad de San Germán de la inscripción de la finca en litigio hecha a favor del causante de los demandados Tomás Quiñones.

"Quinto: La corte cometió error igualmente al decretar y ordenar que la parte demandada devuelva a los demandantes la finca en controversia, con sus casas y establecimientos."

Los demandados agrupan los cinco anteriores motivos de error y se limitan a argumentar el primero por entender que los cuatro últimos son consecuencia legal del pronunciamiento de la corte inferior declarando nulos y sin ningún valor los emplazamientos hechos en el pleito seguido por Tomás Qui-

ñones, pronunciamiento que impugnan en el primer motivo de error.

El pleito cuya declaración de nulidad se interesa ahora fué presentado original como prueba en éste y en él se encuentran tres emplazamientos librados por el secretario para la citación de los entonces demandados, uno para la citación de la viuda Francisca Comas por sí y como representante de sus hijos menores de edad Eugenio y Arturo y otros dos para cada uno de los hijos mayores de edad. Sus diligenciamientos son substancialmente iguales y por esto nos bastará copiar uno de ellos, según aparece en la transcripción de autos que nos ha sido presentada. Dice así:

"CERTIFICADO DEL DILIGENCIAMIENTO DEL MARSHAL."

"Certifico que recibí el presente emplazamiento a las once de la mañana del día 28 de abril de 1905, y que notifiqué el mismo personalmente el día 28 de abril de 1905, a las cinco de la tarde, a doña Francisca Comas, viuda de López por sí y como representante de sus menores hijos Eugenio y Arturo Martín, demandado mencionado en dicho emplazamiento, entregando a dicho demandado y dejando en su poder personalmente en San Germán, su actual residencia, una copia de dicho emplazamiento, y en poder del demandado citado, una copia fiel y exacta de la demanda en el pleito mencionado en dicho emplazamiento.

"Fechado hoy día 29 de abril de 1905.

"Firmado: Por Pedro Ma. Pabón, Marshal auxiliar.

"Mayor de diez y ocho años.

"Suscrito y jurado ante mí hoy día veinte y nueve de abril de mil novecientos cinco.—San Germán.

"Firmado: Joaquín Nazario de Figueroa.—Notario Público.

"(Hay un sello de la notaría.)"

Los tres diligenciamientos de las citaciones están firmados por Pedro Ma. Pabón, marshal auxiliar, y aunque están extendidos en forma de certificado los suscribió y juró ante notario, como ha de hacerse cuando practica la citación una persona que no es el *marshal*, quizá teniendo en cuenta que aunque las decisiones de los tribunales no están acordes

en si un marshal auxiliar puede certificar en su propio nombre el diligenciamiento, sin embargo la regla establecida por las decisiones de California, de donde procede nuestro Código de Enjuiciamiento Civil, es que no puede certificar en su propio nombre sino en el del *marshal.* En el caso de *Orcasitas* v. *Márquez,* 19 D. P. R. 481, dijimos:

"Si la citación la verifica el marshal, basta su certificación expedida bajo la fe del juramento que prestara para ejercer su cargo; si la lleva a efecto un sub-marshal que haya prestado también un previo juramento para ejercer su cargo y que actúe por y bajo la autoridad del marshal, basta de igual modo su certificación expedida y firmada por él a nombre del marshal por y bajo cuya autoridad actúa.   *   *   *   *  "

Estando practicadas esas citaciones por persona distinta del marshal, ya que el sub-marshal que las hizo no suscribió sus diligenciamientos a nombre de aquél, para que la corte adquiriera jurisdicción sobre las personas de los demandados y pudiera seguir el pleito en rebeldía de éstos era necesario de acuerdo con el artículo 92 del Código de Enjuiciamiento Civil que de los diligenciamientos apareciera que la persona que hizo las citaciones no era parte en la acción y que era mayor de 18 años. *Andino* v. *Knight,* 20 D. P. R. 200; *Serrano* v. *Berdiel,* 22 D. P. R. 447; *Torres & Enseñat* v. *Alfaro,* 24 D. P. R. 731; *Delgado* v. *El Registrador,* 25 D. P. R. 489; *Quintana* v. *Aponte,* 26 D. P. R. 196; *Buonomo* v. *Sucesión Juncos,* 28 D. P. R. 414. Estos requisitos no están cumplidos en los diligenciamientos pues si bien con respecto al segundo fuera del cuerpo de la declaración y después de la firma de Pedro Ma. Pabón se dice "mayor de 18 años," certificando después un notario que fué suscrito y jurado ante él, tal manifestación referente a la edad no puede ser considerada jurada pues sólo lo que está dicho en el cuerpo de la certificación y antes de la firma es lo que puede ser considerado como su declaración. Lo que está escrito después de un documento firmado no puede ser con-

siderado como formando parte de él, a menos que de otro modo se demuestre.  Por otra parte, en este pleito no se presentó prueba de que esa persona era mayor de 18 años cuando hizo la citación, por lo que tenemos que llegar a la conclusión de acuerdo con la corte inferior que todos los emplazamientos de los demandados en el primer pleito fueron nulos, que la corte no adquirió jurisdicción sobre ellos y que en consecuencia son nulos también todos los procedimientos posteriores, y por tanto la venta que hizo el marshal, sobre cuyo extremo dijimos lo siguiente en el caso de *Oliver* v. *Oliver*, 23 D. P. R. 190:

"Considerando la venta judicial como un contrato en el que la corte o su representante oficial debidamente autorizado sustituye al verdadero vendedor cuyo 'consentimiento' lo da la corte por una ficción legal paradógica, la corte, sin embargo, tiene que tener jurisdicción por lo menos de la materia en controversia, y ordinariamente sobre la persona del demandado."

Por lo expuesto no tenemos necesidad de considerar si también son nulas las citaciones por alguno de los otros motivos alegados en la demanda.

Pero los apelantes argumentando el primer error que alegan como base de los cuatro siguientes sostienen que después de los años que han transcurrido entre ambos pleitos cualquier ausencia de prueba de un hecho determinado suficiente para dar validez a procedimientos judiciales debe ser presumido y que la prueba de que no hubo citación pesaba sobre los demandantes, sin que la hayan presentado.

No estamos conformes con la primera afirmación de los apelantes pues el mero transcurso del tiempo no crea presunción alguna en favor de citaciones que no aparezcan hechas de acuerdo con la ley.  En cuanto a la segunda, si bien es cierto que a los demandantes incumbía probar que no hubo citación, ellos cumplieron ese deber presentando a la corte las cédulas libradas para los emplazamientos de los demandados y sus diligenciamientos de los que resulta que

las citaciones fueron practicadas por persona que no constaba tener las condiciones exigidas por la ley; y si a pesar de esas faltas en los diligenciamientos era cierto que Pedro Ma. Pabón tenía los requisitos legales para que las citaciones que hizo fueran válidas a los demandados incumbía esta prueba, y no la presentaron.　En el caso de *Buonomo* v. *Sucesión Juncos* antes citado dijimos:

"En este caso que estudiamos la persona que hizo la citación no juró, ni acreditó de otro modo eficaz en derecho, que tuviera la edad que la ley exige para practicar la diligencia y que no fuera parte en la acción.　Pero es más, habiéndose suscitado esta cuestión y habiendo podido la parte demandada probar que la persona que hizo el emplazamiento tenía la edad requerida por la ley, no lo hizo, siendo, por tanto, aplicable también la jurisprudencia establecida en el caso de *Quintana et al.* v. *Aponte,* 26 D. P. R. 196 ＊ ＊ ＊."

El sexto motivo de error alegado se funda en haber sido condenada la parte demandada a pagar los frutos percibidos y debidos percibir de la referida finca hasta el día de la entrega definitiva; pero los apelantes dejan su argumentación para cuando traten que Tomás Quiñones no es un poseedor de mala fe.

También agruparon los apelantes los errores que numeran del 7 al 11 fundados en no haber sido sostenidas las defensas que alegaron en su contestación.　Esos motivos de error dicen así:

"7. La corte cometió error al no declarar con lugar la primera defensa de los demandados sobre que los supuestos defectos alegados en la demanda, aún cuando fueran ciertos, no pueden ahora alegarse para anular y dejar sin efecto todo lo actuado, por haber sido los demandantes culpables de abandono o dejación de su derecho (*laches*) por un período mayor de seis años.

"8. La corte cometió error al no declarar con lugar la segunda defensa sobre que no existe causa de acción, primero porque los herederos mayores de edad no pueden ir contra sus propios actos ni destruir el estado de derecho ya creado; segundo, porque en cuanto a la mitad de los bienes tienen el carácter de gananciales que corresponden a la madre y habiendo sido ésta citada sin defecto alguno

carecen los demandantes de acción en cuanto a dicha mitad, y tercero, porque siendo esto así, los demandantes no pueden reclamar la totalidad de los bienes sin que previamente se proceda a la división de la herencia.

"9. La corte cometió error al no declarar con lugar la cuarta defensa de los demandados sobre que la herencia de Eugenio Comas fué aceptada por los demandantes a beneficio de inventario y que la madre de los demandantes se constituyó en administradora de los bienes de la sucesión, actuando como tal al momento de la interposición de la acción en cobro de crédito hipotecario entablada por Tomás Quiñones.

"10. La corte cometió error al no declarar con lugar la sexta defensa sobre que si se practicara una liquidación de la sociedad de gananciales, la aportación privativa de la madre de los demandantes, no podría ser cubierta por dichos bienes, y por tanto resultaría ella solamente dueña de los ejecutados; y siendo los demandantes, sus herederos, están impedidos de atacar las actuaciones consentidas por su causante.

"11. La corte cometió error al no declarar con lugar la séptima defensa sobre que los demandados han adquirido el dominio del inmueble por el transcurso de diez años entre presentes con buena fe y con justo título."

Con respecto al séptimo error dicen los apelantes que su defensa no es de prescripción. Puesto que no se alega la prescripción como defensa de los demandados y sí sólo abandono del derecho de los demandantes por el tiempo transcurrido en este caso, no cometió la corte sentenciadora el error que se le atribuye.

No tenemos que considerar los motivos expuestos con los números 8, 9 y 10 porque tienen por base el supuesto de que la corte que conoció del pleito del año 1905 adquirió jurisdicción sobre la viuda Francisca Comas y sobre los dos hijos que entonces eran mayores de edad, cuando lo cierto es que no la adquirió según hemos dicho al considerar el primer motivo de error alegado.

Veamos el undécimo error fundado en la adquisición del dominio del inmueble por los demandados por el transcurso de diez años entre presentes con buena fe y justo título.

Como la demanda en este caso fué interpuesta después de diez años de haber sido adjudicada la finca a los demandados y como los sucesores de Arturo López han residido siempre en esta isla la única cuestión a considerar es si Tomás Quiñones la adquirió de buena fe y con justo título.

Dispone el artículo 1858 del Código Civil que el dominio y demás derechos reales sobre bienes inmuebles prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título. El 1841 que para la prescripción ordinaria del dominio y demás derechos reales se necesita poseer las cosas con buena fe y justo título por el tiempo determinado en la ley. El 1852 que las condiciones de buena fe exigidas para la posesión en los artículos 436 y 437 y en el 544 son igualmente necesarias para la determinación de aquel requisito en la prescripción del dominio y demás derechos reales. El 436 dice que se reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide. El 437 que la buena fe se presume siempre y que al que afirma la mala fe de un poseedor corresponde la prueba. El 554 no tiene relación con este caso.

Teniendo en cuenta esos preceptos legales sostienen los demandados apelantes que de la única manera que puede sostenerse que hubo en ellos mala fe es recurriendo al argumento de que conocían la ley pero que la buena fe depende del conocimiento personal y directo del vicio de nulidad en la adquisición y no de la supuesta ficción de que porque la ley se conoce el defecto que en determinado caso su incumplimiento origine ha de conocerse también y lleva consigo necesariamente la mala fe.

Como el artículo 2 del Código Civil declara que la ignorancia de las leyes no excusa de su cumplimiento, es consecuencia legal lógica que el que no cumple con las leyes falta a ellas voluntariamente y por tanto que no procede de buena fe. Y esto es lo ocurrido en este caso pues sabiendo Tomás

Quiñones por la ley que para que la corte adquiera jurisdic-
ción sobre las personas por él demandadas en el pleito de
1905 la citación de ellas debía aparecer hecha por el marshal
o por otra persona que no tuviera interés en el asunto y que
fuera mayor de 18 años, al dejar de cumplir estos requisitos
no procedió de buena fe, en el sentido legal de la palabra;
y aún cuando le cobijaba la presunción de buena fe, fué des-
truída por los demandantes al presentar la prueba de que
no había cumplido con la ley por lo que no pueden sostener
que ignoraban que en su título o modo de adquirir existía
vicio que lo invalidaba.   Como consecuencia de la mala fe
en la adquisición los demandados vienen obligados a devol-
ver no sólo la finca sino también sus frutos de acuerdo con
el artículo 457 del Código Civil.

Faltando pues el requisito de la buena fe en la adquisi-
ción, que es uno de los elementos exigidos por la ley para
adquirir por prescripción ordinaria el dominio de bienes in-
muebles y demás derechos reales huelga determinar si existe
o no el otro requisito de justo título.

También alegan los apelantes los siguientes dos motivos
para su apelación:

"12. La corte cometió error al no dictar pronunciamiento alguno
respecto de la contra-demanda de la parte demandada.

"13. La corte cometió error al no declarar subsistente para todos
sus efectos legales la hipoteca constituída a favor del demandado
Quiñones condenando a su pago a los demandantes."

Al contestar la demanda los ahora apelantes formularon
reconvención alegando que sobre la finca que reclaman los
demandantes pesaba un crédito hipotecario de 18,600 dólares
a favor de los contra-demandantes garantizado con primera
hipoteca y constituído por escritura pública y que de dicha
suma le adeudan actualmente los demandantes 12,600 dóla-
res y sus intereses legales, los que no les han pagado en todo
ni en parte.   La alegación de los demandados concluyó su-
plicando que se dictase sentencia declarando sin lugar la de-

manda en todas sus partes y con lugar su reconvención por 12,600 dólares e intereses legales desde el 31 de mayo de 1905 hasta su pago con las costas.

Los demandantes se opusieron a esa reconvención negando los hechos en ella alegados y la corte al resolver el pleito nada dijo con respecto de ella en su sentencia.

Según resulta de la prueba documental de este pleito Tomás Quiñones adquirió varios de los plazos de la deuda de los demandantes constituída al comprar su padre la finca y garantizada con hipoteca sobre ella, hasta la cantidad de treinta y un mil pesos de la moneda entonces circulante equivalentes a 18,600 dólares, de los cuales les fueron satisfechos 6,000 dólares con las adjudicaciones que se le hicieron en el pleito cuya nulidad es objeto del presente, quedando un saldo a su favor de 12,600 dólares que los deudores, ahora demandantes, no han pagado según declaró Tomás Quiñones, sin otra prueba en contrario. No consta que hayan sido reclamados judicial ó extra judicialmente antes de la reconvención hecha en 17 de febrero de 1917.

Aunque los apelados dicen en su alegato escrito que dedujeron excepción contra esa reconvención por falta en ella de hechos determinantes de causa de acción por no alegar en qué fecha se constituyó la hipoteca y con qué condiciones, la fecha de su vencimiento, la parte de la hipoteca que se pagó y en qué forma se pagó y lo que de ella restaba, no hemos encontrado esa alegación en la transcripción que se nos ha presentado para resolver esta apelación. Además, de la propia demanda aparece la fecha en que Arturo López, padre de los demandados, quedó adeudando 40,000 dólares de los 55,000 en que compró la finca para ser pagados en diversos plazos, y la prueba en el juicio demostró los hechos que los demandantes echan de menos en la reconvención.

También alegan los apelados que la reconvención es improcedente porque no está comprendida en ninguno de los casos del artículo 111 del Código de Enjuiciamiento Civil.

Según dicho precepto se puede establecer reconvención a favor del demandado y en contra del demandante siempre que respecto de ellos pueda dictarse en el juicio una sentencia separada, sobre dicha reconvención, y siempre que nazca de las causas de acción siguientes:

"1. Una causa de acción derivada de la transacción aducida en la demanda como fundamento de la reclamación del demandante, o relacionada con el objeto de la acción:

"2. En una acción derivada de un contrato o en cualquier otra causa de acción derivada también de algún contrato y existente al establecerse la demanda."

Desde luego que en este caso podía dictarse una sentencia separada sobre la reconvención y además la reconvención está relacionada con el objeto de la acción (*connected with the subject-matter*) toda vez que este pleito tiene por objeto anular el que Tomás Quiñones siguió en 1905 contra los ahora demandantes en cobro de parte de los plazos por ellos debidos con garantía hipotecaria de la misma finca que tratan de recobrar, y por la reconvención se cobran 12,600 dólares de los plazos de la misma deuda y la misma garantía. En el caso de *Arvelo v. El Banco Territorial y Agrícola*, 29 D. P. R. 1066, que era análogo al presente los demandantes fueron condenados por reconvención del demandado a pagar a éste la cantidad debida y garantizada por la hipoteca cuya ejecución se anuló.

En vista de lo expuesto la corte inferior debió declarar con lugar la reconvención y condenar a los demandantes a pagar a los demandados la cantidad de 12,600 dólares con sus intereses legales del seis por ciento anual, por no haber convenio sobre pago de intereses, desde el 17 de febrero de 1917 en que por primera vez fué reclamado el pago de dicha cantidad.

El otro motivo de error expuesto con el número 13 no encuentra apoyo en los autos pues los demandados no pidieron lo que ahora alegan debió declarar la corte con respecto

a la vigencia del crédito hipotecario de los demandados, lo que por otra parte parece ser una consecuencia de la declaración de nulidad del pleito de 1905 por defectos en el procedimiento para el cobro de algunos de los plazos de la hipoteca y de la cancelación decretada de las inscripciones en el registro de la propiedad de las adjudicaciones que fueron hechas a Tomás Quiñones.

El último error alegado y señalado con el número 14 es por haber sido condenados los demandados-apelantes al pago de las costas, gastos, desembolsos y honorarios de abogado en que ha incurrido la parte demandante.

Si tenemos en cuenta que el defecto de no aparecer de los diligenciamientos que la persona que practicó las citaciones no era parte en el pleito no era de gran importancia, pues tal vez ese hecho aparece de los mismos autos (*Serrano v. Berdiel,* 22 D. P. R. 447) y que los demandados podían creer que no había defecto por la edad de dicha persona por aparecer antes de su juramento, aunque debajo de su firma, que era mayor de 18 años y porque siendo un sub-marshal debía tener más de esa edad, así como por la jurisprudencia contradictoria en cuanto a si podría certificar en su propio nombre los diligenciamientos, habremos de llegar a la conclusión de que no hubo temeridad en su defensa en este pleito y que no debió serle impuesto el pago de las costas con mayor razón cuanto que su reconvención contra los demandantes era justa.

Por todo lo expuesto la sentencia apelada debe ser confirmada pero modificándola en el sentido de declarar con lugar la reconvención condenando a los demandantes a pagar a los demandados la cantidad reclamada y sus intereses legales, y también en cuanto a las costas que se declaran sin especial condena.

> *Confirmada la sentencia apelada pero modificándola en el sentido de declarar con lugar la reconvención, condenando a los deman-*

*dantes a pagar la suma de doce mil seiscien-*
*tos dólares y sus intereses legales, sin espe-*
*cial condenación de costas.*

Jueces concurrentes : Sres. Presidente del Toro y Asocia-
dos Wolf y Hutchison.

RESOLUCIÓN SOBRE MOCIÓN DE RECONSIDERACIÓN, DE
JUNIO 9, 1922.

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tri-
bunal.

Los demandantes en este pleito solicitaron que se decla-
rase nula la sentencia dictada en otro pleito seguido por el
causante de los ahora demandados contra el causante de los
actuales demandantes que lo condenó a pagar $9,600 por
plazos vencidos de una deuda hipotecaria mayor y también
la nulidad de la venta que para satisfacer la sentencia se
hizo de ciertos bienes que fueron adjudicados por $6,000 al
ejecutante de la sentencia.   Los ahora demandados se opu-
sieron a que se declarasen esas nulidades y por contra-de-
manda pidieron que se condenase a sus demandantes a satis-
facerles los $3,600 que no fueron cubiertos con la ejecución
de la sentencia más otros plazos que quedaron a deberle de
la hipoteca, todo con un total de $12,600.   Nuestra sentencia
declaró que existen las nulidades que se alegaron y condenó
a los demandantes a que pagaran a sus demandados y contra-
demandantes dichos $12,600, pero se nos pide por los deman-
dados y contra-demandantes que la reconsideremos a fin de
que ordenemos el pago por los demandantes de los $6,000
que fué el precio de la adjudicación declarada nula, fundán-
dose en el artículo 1270 del Código Civil Revisado según el
cual declarada nula una obligación los contratantes deben
restituirse recíprocamente las cosas que hubieren sido ma-
teria del contrato, con sus frutos y el precio con sus intereses.

No tenemos que reconsiderar nuestra sentencia para ha-
cer esa declaración porque declarada nula la venta judicial,

en la que no medió entrega de dinero sino adjudicación por parte del precio adeudado, y anulado también el procedimiento desde la citación de los entonces demandados, no existiendo legalmente aquella sentencia y adjudicación, las cosas vuelven a quedar necesariamente y sin especial declaración nuestra en el mismo estado que tenían antes de haberse cometido las nulidades que han sido declaradas.

La moción de reconsideración debe ser negada.

*Denegada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Hutchison.