HÉCTOR Y JULIO CÉSAR RODRÍGUEZ SOLER, demandantes y apelados, *v.* RAMÓN ALONSO y SUCRS. DE SOBRINO & CÍA., demandados y apelantes.

No. 4046.—*Visto:* Febrero 17, 1927. *Resuelto:* Julio 26, 1927.

1. ACCIONES—ACUMULACIÓN *(Joinder)*, DIVISIÓN *(Splitting)*, CONSOLIDACIÓN Y SEPARACIÓN—ACUMULACIÓN DE ACCIONES—NATURALEZA DE Y FUNDAMENTOS DE LA ACCIÓN—ACCIÓN REIVINDICATORIA.—En el caso de autos se acumula a la acción reivindicatoria la de nulidad del título del demandado.

2. CORTES—NATURALEZA, EXTENSIÓN Y EJERCICIO DE JURISDICCIÓN EN GENERAL—PRESUNCIÓN DE JURISDICCIÓN—CORTES DE JURISDICCIÓN INFERIOR O LIMITADA.—Cuando los autos de una corte municipal guardan silencio respecto a la existencia de alguna cuestión jurisdiccional, la presunción es que tales constancias no existieron.

3. CORTES—NATURALEZA, EXTENSIÓN Y EJERCICIO DE JURISDICCIÓN EN GENERAL—PRESUNCIÓN DE JURISDICCIÓN—CORTES DE JURISDICCIÓN INFERIOR O LIMITADA.—Cuando los autos de una corte municipal guardan silencio respecto a la existencia de alguna cuestión jurisdiccional, la presunción de su no existencia puede ser destruida mediante prueba *aliunde*.

4. EJECUCIÓN—VENTA—MANERA, PROCEDER *(Conduct)*, VALIDEZ Y CONFIRMACIÓN O ANULACIÓN—ACCIÓN SOBRE NULIDAD DE ADJUDICACIÓN Y VENTA—EVIDENCIA—PESO DE LA PRUEBA.—Fundada una demanda de nulidad de actuaciones esencialmente en vicios jurisdiccionales, cuando la corte que conoció del procedimiento es una no de récord, el peso de la prueba recae sobre el demandado para demostrar que el hecho jurisdiccional realmente existió.

5. TUTOR Y PUPILO—ACCIONES—CITACIÓN Y COMPARECENCIA—EN GENERAL.—La comparecencia voluntaria de un tutor a nombre de unos menores no suple la falta de citación personal de éstos.

6. EJECUCIÓN—VENTA—MANERA, PROCEDER *(Conduct)*, VALIDEZ Y CONFIRMACIÓN O ANULACIÓN—ACCIÓN SOBRE NULIDAD DE LA ADJUDICACIÓN Y VENTA—EVIDENCIA—PESO DE LA PRUEBA.—En acción sobre nulidad de actuaciones, fundada, entre otras cosas, en el hecho de no haberse practicado por el márshal el embargo de los bienes sujetos a la ejecución, el peso de la prueba de que tal embargo se hizo, corresponde al demandado.

7. EJECUCIÓN—GRAVAMEN *(Lien)*, EMBARGO *(Levy)* Y ALCANCE Y CUSTODIA DE LA PROPIEDAD—NECESIDAD DEL EMBARGO *(Levy)* PREVIO.—El embargo es un requisito previo para la venta de bienes en ejecución de sentencia, de tal modo que su falta es bastante para declarar nula y sin efecto la venta realizada.

8. EJECUCIÓN—"RETURN"—ACTA DE REMATE—MANIFESTACIÓN EN CUANTO AL EMBARGO DE LOS BIENES REMATADOS.—Vendidos unos bienes en ejecución de sentencia, cuando de los autos no aparece que se hubieran embargado preventivamente unos bienes ni existe constancia que luego de expedido el mandamiento de ejecución al márshal él efectuara el embargo, su mera manifestación en el acta de remate de haberse procedido al remate de los bienes embargados no es suficiente para dejar establecida la existencia del embargo.

9. LIMITACIÓN DE ACCIONES—ESTATUTOS DE LIMITACIÓN—LIMITACIÓN APLICABLE A DETERMINADAS ACCIONES—NULIDAD DE CONTRATOS—ADJUDICACIÓN Y VENTA EN EJECUCIÓN DE SENTENCIA.—En acción para que se declare inexistente la adjudicación que de una propiedad hizo un márshal, declarados inexistentes los procedimientos y las diligencias de ejecución y adjudicación, carece de fundamento la alegación de prescripción para la acción de nulidad del contrato.

SENTENCIA de *Pablo Berga, J.* (San Juan), declarando con lugar la demanda y sin lugar la reconvención, con costas. *Confirmada.*

*José G. Torres,* abogado de los apelantes; *V. M. Fernández y M. Tous Soto,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

[1] Los demandantes y apelados ejercitan dos causas de acción. Una es la de reivindicación genérica del condominio de una mitad en el valor de cierta finca urbana radi-

cada en el pueblo de Vega Baja, y la segunda, que es base de la anterior, tiene por objeto que se declare inexistente la adjudicación que de dicha finca hizo el Márshal de la Corte Municipal de Vega Baja al demandado en el procedimiento que en cobro de dinero estableció la mercantil Sucesores de Sobrino & Compañía contra Héctor y Julio César Rodríguez y Providencia Rodríguez y Soler.

La acción reivindicatoria se funda substancialmente en el título que los demandantes alegan tener por mitad sobre el condominio en la indicada finca y en la posesión actual de la propiedad en poder del demandado Ramón Alonso. Y en relación con la inexistencia de la adjudicación del inmueble, los demandantes alegan: que en febrero 9, 1914, ante la Corte Municipal de Vega Baja, la mercantil Sucesores de Sobrino & Compañía promovió contra los demandados arriba mencionados una acción civil en cobro de la cantidad de $198.40; que en dicha acción no se expidió emplazamiento alguno para la citación de los demandados, pero compareció Quiterio Rodríguez diciéndose tutor de los menores Héctor y Julio César Rodríguez, sin que en realidad lo fuera, y a nombre de ellos se allanó a la demanda, siendo así que la Corte de Distrito de San Juan, ni otra alguna, habían autorizado tal comparecencia y allanamiento; que la Corte Municipal de Vega Baja a virtud tan sólo del referido allanamiento, dictó sentencia en mayo 6, 1914, condenando a los demandados al pago de la cantidad reclamada en la demanda, y sus intereses legales; que expedida orden de ejecución de dicha sentencia al márshal de la corte municipal, este funcionario, sin trabar embargo sobre una finca rústica de 70 cuerdas que se describe, ni ejecutar otro acto de apoderamiento del mismo, fijó para junio 10, 1924, la venta en pública subasta de la referida finca; que la subasta se anunció mediante edictos publicados en las ediciones de "La Democracia" correspondiente a los días 27 de mayo y 3 y 10 de junio de 1914, y celebrada la misma se adjudicó por precio de $525 al demandado Ramón Alonso,

quien inmediatamente tomó posesión de la finca, la que aún continúa detentándola.

El demandado aceptó ciertos hechos, negó otros, y sustancialmente alegó en su defensa: que Quiterio Rodríguez era entonces el tutor legítimo de los menores demandantes, entonces demandados, cuyo cargo se discernió por la Corte de Distrito de San Juan prestando juramento y registrándose la tutela; que el tutor no necesitaba autorización de la corte para contestar la demanda contra los sujetos a tutela; que la comparecencia de dicho tutor tuvo por objeto consentir en que se dictase sentencia en la forma que establecen los artículos 358 y siguientes del Código de Enjuiciamiento Civil, lo cual hizo en ahorro de costas para los menores, toda vez que la obligación por la cual demandaban Sucesores de Sobrino & Compañía estaba legalmente reconocida en la escritura de particiones practicada entre los herederos de los cónyuges Miguel Rodríguez Sierra y Angelina Soler; que la sentencia por la Corte Municipal de Vega Baja se dictó también por confesión jurada de la otra demandada, mayor de edad, Providencia Rodríguez, que en la ejecución de dicha sentencia se llenaron todas las formalidades legales, aunque Sucesores de Sobrino & Compañía contestaron la demanda por haber sido incluídos como demandados a virtud de excepción previa que el otro demandado presentó a la demanda original. En realidad no eran una parte necesaria, ya que la demanda se funda esencialmente en vicios jurisdiccionales que *prima facie* hacen inexistentes los procedimientos y en su consecuencia nula la sentencia, así como las diligencias de subasta.

La corte inferior, que finalmente llegó a esta conclusión, dictó sentencia en favor de los demandantes reconociéndoles como dueños de una mitad pro indivisa de la finca que se describe en la demanda y condenando además al demandado a pagar a dichos demandantes la mitad del producido neto de los frutos, ''o sea la suma de $75 anuales desde el 16 de

junio de 1914 hasta la completa entrega de sus participaciones.''

Para llegar a esta conclusión la corte dió como probados los siguientes hechos:

· ''Que el demandante Julio César Rodríguez y Soler, fué emancipado por resolución del Hon. Charles E. Foote, Juez de Distrito de San Juan, Distrito Primero, de 11 de febrero de 1925.

''Que Providencia Rodríguez y Soler, falleció en el pueblo de Quebradillas, el 5 de febrero de 1916, ab intestato, estando casada con José Gonzalo Lloveras y Terrón, y dejando como única descendencia un hijo habido en dicho matrimonio, que lo es Gilberto Lloveras Rodríguez, que nació el 16 de agosto, 1912.

''Que con fecha 9 de diciembre de 1910, el Hon. Pedro de Aldrey, Juez de Distrito de San Juan, Sec. 1a., discernió el cargo de tutor legítimo de los menores Providencia, Isabel, Héctor Miguel y Julio César Rodríguez y Soler, a favor de José Quiterio Rodríguez (Tutela No. 87).

''Que por escritura de fecha 30 de septiembre de 1912, ante el notario José G. Torres, se verificó la partición de bienes entre los herederos de Miguel Rodríguez Sierra, padre de dichos menores, en que compareció el tutor y reconoció, entre otras deudas, una a favor de Sucesores de Sobrino & Cía., por $198.48; cuya partición fué aprobada por la Corte de Distrito de San Juan, Sec. 1a., y por el Hon. Félix Córdova Dávila, el 6 de diciembre, 1912. En la escritura se hace constar que las hermanas Providencia y María Isabel entregarán, por las adjudicaciones que se les hace, a los hermanos Héctor y Julio César la suma de $300, y además aquéllas tomarán a su cargo el pago de deudas, y en la resolución de 6 de diciembre, 1912, se hace constar que la aprobación se hace sin perjuicio de la autorización judicial que debe promoverse para la inversión de la suma de $300 que por dicho documento se comprometen a satisfacer a los herederos menores de edad, sus coherederos.

''Que ante la Corte Municipal de Vega Baja, el día 9 de febrero de 1914, Sucesores de Sobrino y Compañía, como demandantes, presentaron demanda contra la Sucesión de Miguel Rodríguez Sierra y Angelina Soler, compuesta de Providencia Rodríguez, mayor de edad, y casada con Gonzalo Lloveras; de Héctor y Julio César Rodríguez, menores de edad bajo la tutela de su tío José Quiterio Rodríguez, y de Isabel Rodríguez, que estuvo casada con Eliseo Fernández, y que habiendo muerto sin descendencia ni ascendencia, le

sucedieron sus hermanos los otros demandantes y el cónyuge viudo Eliseo Fernández en cuanto a la cuota usufructuaria, y en cuya demanda se alegó que por escritura de 30 de septiembre, 1912, las hermanas Providencia e Isabel Rodríguez, menores emancipadas por matrimonio, y José Quiterio Rodríguez, como tutor de los menores Héctor y Julio César Rodríguez, verificaron la partición de los bienes quedados al fallecimiento de sus padres Miguel Rodríguez Sierra y Angelina Soler Hernández, y en ella reconocieron adeudar a la sociedad demandante la suma de $198.48 que se incluyeron como bajas del capital relicto, que no habían sido satisfechos y que por convenio venía devengando el interés del 1% mensual, suplicando sentencia por la cantidad adeudada, intereses y costas. No consta en autos emplazamiento alguno a los demandados y sí una moción de citación por edictos del demandado Eliseo Fernández; un juramento de José Quiterio Rodríguez que dice que fué tutor nombrado para la guarda de la menor Isabel Rodríguez y Soler, que había muerto hacía poco, estando casada con Eliseo Fernández, que se había ausentado de la Isla; una orden de la Corte, disponiendo la citación por edictos del demandado Eliseo Fernández y una declaración jurada del administrador de 'La Democracia' sobre la publicación; un escrito de Providencia Rodríguez, por sí, aceptando los hechos de la demanda y consintiendo sentencia contra ella; otro escrito de José Quiterio Rodríguez, como tutor de los menores Héctor y Julio César Rodríguez y Soler, haciendo igual aceptación y consentimiento; sentencia dictada el 6 de mayo de 1914 a virtud de la no contestación del demandado Eliseo Fernández y del allanamiento de los otros demandados, ordenando que la sucesión demandada pagara a la sociedad demandante la cantidad de $198.40, intereses legales y costas. Aparece, además, que en 23 de mayo de 1914, se libró mandamiento de ejecución de dicha sentencia, sin constar diligencia de embargo de bienes, pero sí un recorte impreso de periódico de un edicto anunciando la venta para el 16 de junio, 1914, de una finca rústica de 47 cuerdas en el barrio Algarrobo, otra de 70 cuerdas en el barrio Pugnado Afuera y una finca urbana en la calle Tercera Avenida, todas radicadas en Vega Baja, siendo la última la que es objeto de demanda y unida a dicho recorte una declaración jurada firmada por Carlos R. Aguiar de la cual consta que dicho edicto fué publicado en 'La Democracia,' periódico editado en San Juan, los días 27 de mayo, y 3 y 10 de junio, 1914. Y consta también un acta de remate de los bienes que entonces se dicen embargados en la cual no figura la primera de las dos fincas rústicas descritas en el

edicto, y sí en primer lugar el No. 2 la rústica de 70 cuerdas objeto de esta demanda y en segundo lugar el No. 3 la urbana, apareciendo adjudicada la rústica al aquí demandado Don Ramón Alonso por la cantidad de $525.00 y. la urbana a Don Tomás Landrón por la cantidad de $630.00 otorgándose escritura en 20 de junio de 1914 y bajo el número 54 ante el notario Don José G. Torres, haciéndose constar dicha adjudicación. El márshal expresa en el diligenciado de la orden de ejecución, que no remató la finca rústica en el barrio Algarrobo, señalada con el No. 1 en el edicto, por haber recibido un mandamiento de *injunction* de la Corte de Distrito de San Juan, suspendiendo la subasta de la misma.

"Que por virtud de la venta judicial verificada por el márshal de la Corte Municipal de Vega Baja, el demandado Ramón Alonso entró en posesión del inmueble en 16 de junio de 1914 y percibe sus frutos, sin que haya dado desde entonces participación alguna a los demandantes.

"Que dicha finca puede dar un producto neto, después de descontar los gastos, de $150.00 al año. Y la Corte llega a esta conclusión, dando crédito a los testigos del demandado, por cuanto el testigo del demandante se limitó a decir que la finca tiene muy poco terreno bueno, mucha piedra, y una vega de 6 u 8 cuerdas y que en arrendamiento valdría $35 mensuales hasta que se construyó hace cinco años la carretera y desde entonces $1,000 anuales por la piedra que se puede vender, admitiendo que cuando la compró el demandado no había en ella más que piedras y malezas; no habiendo por otra parte el demandante demostrado cuál es el producido neto.

"Y que en 3 de octubre, 1914, el tutor José Quiterio Rodríguez notificó al fiscal y presentó una moción manifestando a la Corte (caso 6134) que los $300 de los menores Héctor Miguel y Julio César, habían sido satisfechos con motivo de la venta de las dos fincas adjudicadas a Providencia e Isabel Rodríguez, y solicitaba autorización para invertir esa suma en reparaciones de dos casas de maderas, adjudicadas a los menores, pero sin que aparezca resolución alguna sobre dicha solicitud."

[2, 3, 4] Luego la corte en sus razonamientos legales declara, entre otros motivos, que también examinaremos, que la adjudicación de la finca al demandado es nula porque no consta en autos emplazamiento alguno que demuestre la citación personal de los menores, quienes estaban bajo la tutela de Quiterio Rodríguez y también porque no aparece de

tales autos tramitados ante la Corte Municipal de Vega Baja, de que se trabara embargo sobre las fincas que fueron subastadas. No hay duda que la omisión de uno u otro requisito envuelve un vicio de jurisdicción que hace inexistentes los procedimientos, nula la sentencia y como secuela las diligencias para su ejecución.

Los apelados, en la fecha en que fueron demandados por Sucesores de Sobrino & Cía., ante la Corte Municipal de Vega Baja, eran menores de 14 años de edad.

El apelante, sin embargo, sostiene: 1º, que el mero hecho de que los emplazamientos no estén unidos a los autos no demuestra que se hubiere dejado de hacer la citación personal de dichos menores y que correspondía probar a los demandantes que no se habían verificado tales emplazamientos; y 2º, porque habiendo comparecido el tutor a nombre de los menores, esta comparecencia suple a la de éstos, quienes faltos de capacidad legal para comparecer, lo hace el tutor a su nombre.

No hay que pasar desapercibido que las cortes municipales no son cortes de récord y el hecho de que los autos guarden silencio respecto a la existencia de alguna cuestión jurisdiccional, no puede crear la presunción de que tales diligencias hayan existido. Por el contrario, la presunción es que no existieron. La cuestión entonces sería si esa presunción puede ser destruída mediante prueba *aliunde*. De manera que el peso de la prueba pasaría al demandado para demostrar que el hecho jurisdiccional del emplazamiento realmente existió, pero de los autos no aparece que el apelante hubiera hecho esfuerzo alguno en tal sentido.

"Hay una distinción bien reconocida entre la presunción que debe hacerse de la sentencia de una corte de jurisdicción limitada o especial y la de una corte de jurisdicción general. Es regla general bien establecida que cuando la sentencia de una corte superior y de jurisdicción general que actúa dentro de las atribuciones de su jurisdicción es atacada colateralmente, toda presunción está a fa-

vor, no solamente de los procedimientos sino también de la jurisdicción de la corte, tanto en lo que se refiere al asunto en controversia como a las partes, a menos que lo contrario aparezca afirmativamente de la faz de los autos mismos. . . . .

"En lo que se refiere a cortes de jurisdicción inferior o que tienen poderes limitados, y que no son de récord, prevalece una regla distinta de la reconocida y vigente con respecto a sentencias de cortes de jurisdicción general. La jurisdicción de cortes inferiores que no son de récord debe demostrarse afirmativamente, no existiendo presunción sobre la misma. En realidad se ha establecido la regla de que la presunción es que una corte de jurisdicción inferior o limitada no tiene jurisdicción alguna cuando ésta no aparece, y los hechos que dan jurisdicción a la corte no son alegados debidamente. Por lo menos si se niega la jurisdicción de la corte, incumbe a la parte que se basa en la sentencia de la corte inferior demostrar que la corte tenía jurisdicción, y las propias manifestaciones en decretos de cortes de poderes especiales o limitados no pueden dar jurisdicción a las mismas." 15 R.C.L. 880–882.

En el caso de *Torres & Enseñat* v. *Alfaro*, 24 D.P.R. 731, se trataba de un procedimiento seguido ante una corte municipal, y esta corte dijo:

"El artículo 92 del Código de Enjuiciamiento Civil previene que 'cuando el márshal hiciere la citación, la devolverá a la oficina del secretario que la expidió, bajo su certificación de haber sido cumplimentada y de haber hecho entrega de la copia de la demanda que se hubiere acompañado a la citación, y que cuando se diligenciare por cualquier otra persona, se devolverá a la misma oficina con la declaración jurada de dicha persona de que ha practicado la diligencia de citación y entregado la copia de la demanda, en caso de haberse acompañado.' Ante precepto tan terminante, es indiscutible que cualquiera que sea quien haga la citación, debe devolverse diligenciada a la oficina del secretario de la corte en los términos prevenidos por la ley.

"Y esa devolución es requisito indispensable para la anotación de la rebeldía y el pronunciamiento de la sentencia, pues sólo con examen del diligenciado del emplazamiento podrá saberse si la corte ha adquirido jurisdicción sobre la persona del demandado por haber sido éste emplazado en forma debida.

"Para que un demandado quede sometido a la jurisdicción de una corte, es necesario que se le cite en la forma que la ley describe

y además que se devuelva a la corte una constancia de haberse llevado a efecto la citación, de la cual aparezca que los requisitos exigidos por el estatuto se cumplieron debidamente, todo ello sin perjuicio de lo dispuesto en el artículo 98 del Código de Enjuiciamiento Civil.   Orcasitas vs. Márquez et al., 19 D.P.R. 477.

"Y la prueba de haberse hecho la citación con entrega de la demanda al demandado cuando se hiciere por cualquier otra persona que no sea el márshal, será la declaración escrita y jurada por éste, según el artículo 97 del Código de Enjuiciamiento Civil.

"En el caso presente ante la Corte Municipal de Coamo no existía prueba alguna de haberse practicado la citación, pues la declaración jurada de haberla hecho ` Jovino Torres se prestó por éste ante el Juez de Paz de Juana Díaz en 26 de noviembre de 1910,. cuando la sentencia había sido registrada en 18 del propio noviembre, es decir, ocho días antes del juramento de la diligencia de emplazamiento.   El demandado no estaba bajo la jurisdicción de la corte al dictarse la referida sentencia en rebeldía del mismo.''

[5] La segunda contención del 'apelante de si la comparecencia del tutor a nombre de los menores suple la falta de su citación personal, levanta un punto legal.   La cuestión, sin embargo, aparece asimismo claramente resuelta en jurisprudencia ya sentada por esta corte.   En el caso de *Orcasitas v. Márquez et al., supra,* esta corte se expresó de este modo:

"El artículo 93 del Código de Enjuiciamiento Civil, en lo pertinente, dice así:

" 'La citación se hará mediante entrega de una copia de la misma, como sigue:

" '3. Si fuere contra un menor de catorce años que residiere en la Isla, a dicho menor personalmente, así como también a su padre, madre o tutor; y si ninguno de éstos se encontrare en la Isla, entonces a cualesquiera de las personas que tuvieren a su cargo o cuidado dicho menor, o con quien viviere o en cuyo servicio estuviere empleado.

    *      *      *      *      *      *      *

" '6. En los demás casos al demandado personalmente.'

"De acuerdo, pues con la letra de la ley que es tan clara que no puede interpretarse de otro modo, en todo caso en que se demande a un menor de edad, es necesario que se le cite personalmente.

"Esta cuestión no es nueva. Este Tribunal Supremo en el caso de Vías vs. Sucesión Pérez et al., 15 D.P.R. 732, estableció la siguiente doctrina: 'Cuando los demandados son menores de edad el emplazamiento deberá notificarse al padre o representante del menor, siendo indispensable en todo caso la notificación personal de los menores demandados, ya conste o no que son mayores o menores de 14 años; siendo además necesario para que la corte adquiera jurisdicción sobre tales menores que el certificado de diligenciamiento por el márshal demuestre que han sido notificados personalmente.'

"Y la Corte Suprema de California, interpretando y aplicando preceptos de ley iguales a los vigentes en Puerto Rico sobre la materia, en el caso de Fanning vs. Foley, 99 Cal. 336, resolvió que una citación hecha al guardián de un menor sin verificarla personalmente además al menor, era insuficiente; que la rebeldía registrada en contra del guardián no obligaba ni al guardián ni al menor, y que el decreto dictado sobre la base de la rebeldía era absolutamente nulo.

"A primera vista parece que la citación personal de un menor de catorce años, habiéndose citado a su representante legal, es completamente ineficaz y no responde a fin práctico alguno. Sin embargo, si se analiza la cuestión a fondo se verá que uno de los fines de la ley es, mientras ello sea posible, el de asegurarse de modo directo de la existencia real y positiva del demandado antes de que quede sometido a la jurisdicción de la corte."

Así, pues la comparecencia voluntaria del tutor a nombre de los menores no suplía la falta de su citación personal, y la corte inferior al llegar a esa conclusión no cometió el error que se le imputa.

[6] Otra omisión que tiene el carácter de vicio jurisdiccional es la de no haberse practicado por el márshal el embargo de los bienes sujetos a ejecución en el procedimiento anterior de Sucesores de Sobrino y Cía. contra los demandantes. El apelante sostiene lo mismo que sostuvo con la falta de los emplazamientos, o sea, que correspondía a los demandantes demostrar que no se hizo el embargo. Cabe, por consiguiente, igual argumentación: el peso de la prueba pasaba al demandado en este punto.

[7] El apelante sostiene además que el embargo no es

un requisito previo para la venta, de tal modo que su falta fuese bastante para declarar nula y sin efecto la subasta realizada. El apelante no hace citas de autoridades para apoyar su tesis. Por nuestra parte hemos examinado las autoridades en relación con esta materia y ellas declaran la inexistencia de la venta. En 23 Corpus Juris 425–426, se dice lo siguiente:

"Según la mayoría de las autoridades, para que el márshal tenga facultades para vender la propiedad y pueda investir de un título válido al comprador, es indispensable que se haya trabado un embargo sobre la propiedad vendida, y esto es cierto tanto en lo que se refiere a la propiedad mueble como a la inmueble. Es inexistente una venta a menos que sea precedida de un embargo válido, y el comprador no adquiere título. Un funcionario después de haber trabado un embargo sobre determinada propiedad y anunciado ésta para la venta, no tiene autoridad para substituirla y ofrecer en venta otra propiedad que no sea la embargada, aun con el consentimiento del deudor. En algunas jurisdicciones un embargo formal sobre bienes inmuebles en ejecución de una sentencia que constituye un embargo sobre la finca, es innecesario, y el dejar el márshal de embargar los terrenos antes de efectuar la venta, no perjudicará el título del poseedor. El mero otorgamiento de una orden de ejecución no da al funcionario a quien va dirigida, el derecho de posesión sobre propiedad alguna hasta tanto el mandamiento es cumplimentado."

En 17 R.C.L. 103 se dice que parece ser un bien establecido principio que un embargo (*levy and seizure*) es esencial para la validez de una venta en ejecución. También se habla de que hay autoridades que sostienen que la validez de una venta por el márshal no queda afectada por la falta de hacer el embargo como prescribe el estatuto y que de acuerdo con esta regla si la propiedad ha sido preventivamente embargada para asegurar la sentencia, ningún embargo es necesario. Se dice también que otras cortes han resuelto que un embargo sobre un terreno no es necesario cuando la sentencia es un gravamen sobre el mismo, y, por consiguiente, cuando se vende un terreno en ejecución, sólo

es esencial que se observen los requisitos legales y que se haga constar claramente qué propiedad ha de ser vendida, describiéndola con suficiente certeza, y que ha de adquirir el mejor postor.

En un aspecto parecido esta corte ha sostenido que tratándose de una acción hipotecaria, no es necesario el embargo por el carácter mismo real de la acción, la que sujeta directamente los bienes al pago de la obligación. Véase el caso de *Thyboe et al.* v. *San Juan Fruit Co.*, resuelto en junio 8, 1927, 36 D.P.R. 892. Pero ésta es la excepción a la regla general que establece, como hemos visto, la necesidad del embargo en las acciones personales para dar validez a la venta de bienes que fuesen objeto de ejecución.

[8] La sección 9 de la ley sobre efectividad de sentencias, aprobada en marzo 1, 1902, en lo pertinente dice: "El embargo y prohibición de enajenar inmuebles se efectuarán anotándolos en el Registro de la Propiedad y notificándolo al demandado. . ."

De los autos no aparece que Sucesores de Sobrino y Cía. hubieran embargado preventivamente, de acuerdo con la sección 9 citada, pero tampoco existe constancia en los autos que luego de expedido el mandamiento de ejecución el márshal efectuara el embargo, pues su mera manifestación en el acta de remate diciendo: "procedí al remate de los bienes embargados" no es suficiente para dejar establecida la existencia del embargo. Hubiera bastado que dicho funcionario hubiera cumplido con lo que dispone la sección 5ª de la ley relativa a las sentencias y la manera de satifacerlas, aprobada en marzo 9, 1905, que lee como sigue:

"Para trabar un embargo sobre una propiedad inmueble no será menester que el funcionario encargado de llevarlo a cabo se constituya en la finca, y siendo bastante que en el auto disponiendo la ejecución se haga constar por endoso el embargo, *describiendo la finca,* y remitirá una copia de dicho auto, con el endoso, al registrador de la propiedad del distrito en que radicare la finca, para la correspondiente inscripción."

[9] Bajo las circunstancias de este pleito, en que se declaran inexistentes los procedimientos, así como las diligencias de ejecución y adjudicación de la finca del demandado, carece de fundamento la alegación de prescripción basada en los artículos 1268, 1864 y 1858 del Código Civil Revisado. Bastaría referirnos al caso de *Solá* v. *Castro,* 32 D.P.R. 804, donde se dijo:

"Respecto a la prescripción no existe razón legal en que fundarla. La base esencial en que descansan las premisas que se han sentado para declarar nula la venta judicial, hace inaplicable la disposición del artículo 1268, *supra,* porque partiendo de la inexistencia de la orden de ejecución, no tenemos elementos que den apariencia a la existencia de un contrato y la virtualidad del contrato de venta judicial quedaba supeditada a la validez o no de la orden de ejecución, y en este punto tiene aplicación la doctrina sentada por esta Corte Suprema en el caso de Oliver et al. vs. Oliver, 23 D.P.R. 181, que declara:

"El término de prescripción de cuatro años que se fija para las acciones de nulidad es aplicable únicamente a los contratos en que concurren los requisitos que expresa el artículo 1228 del Código Civil.' "

Véase también el caso de *López et al.* v. *Quiñones,* 30 D.P.R. 342.

Los apelados reclaman los frutos desde que el apelante entró en posesión de la finca, y la corte inferior, tratando este extremo, dice:

"Al considerar la cuestión anterior hemos tratado, incidentalmente, la cuestión de que si el demandado no es un poseedor de buena fe, los demandantes tienen derecho a los frutos producidos. Estos frutos, no habiendo los demandantes demostrado cuál es el producido neto de la finca, deben fijarse en la suma de $150 anuales en que los señala el demandado, después de descontar los gastos. Morales vs. Landrau, 15 D.P.R. 797, Arvelo vs. Banco Territorial y Agrícola, 29 D.P.R. 1066.''

La prueba sostiene la conclusión del juez inferior.

*Por todo lo expuesto, la sentencia apelada debe ser confirmada.*