María Luisa Monrozeau Lacomba, et als., demandantes y apelados, *v.* Pedro G. Amador Machado et al., demandados y apelantes.

No. 4676.—*Sometido:* Junio 5, 1929. *Resuelto:* Nov. 8, 1929.

*A. Lens Cuena, F. M. Susoni Jr.,* abogados de los apelantes; *A. Reyes Delgado,* abogado de los apelados.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

■ Se trata de una acción reivindicatoria. La primera contención de los apelantes es que la corte inferior erró al desestimar una excepción previa en la cual se alegaba que la demanda es ambigua, ininteligible y dudosa.

Los demandantes sostienen que el 25 de abril de 1911, su causante don Antonio Monrozeau Alcaide tomó a préstamo del demandado Pedro G. Amador la cantidad de $416, la que prometió reembolsarle el 25 de abril, 1912, y que para garantizar esa obligación y sus intereses al 12 por ciento anual, creó, mediante documento privado, un gravamen sobre dos fincas que se describen en la demanda. Los demandados afrontaron esta alegación con una negación en forma tal que envolvía la afirmativa (*negative pregnant*). Alegaron afirmativamente que el 16 de junio de 1911 Antonio Monrozeau Alcaide vendió a Pedro G. Amador las fincas descritas en la demanda por $416 con la condición de que si Monrozeau le reintegraba esa suma el 25 de abril, 1912, Amador otorgaría escritura de retroventa de las fincas a favor de Monrozeau.

El documento en cuestión fué presentado en evidencia por los demandados. Dispone que en caso de que Monrozeau satisfaga el 25 de abril del siguiente año, 1912, una obligación suscrita por él el 25 del pasado abril, por $416 y sus intereses a razón del 12 por ciento desde la fecha del otorgamiento, además de ciertas costas y desembolsos, el comprador o sus representantes le otorgarán escritura de retroventa.

Así, pues, aparece que la naturaleza del gravamen a que se contrae la demanda fué algo que los demandados conocían perfectamente; que la ambigüedad de que se quejan no les indujo a error; que la omisión de una descripción más definida del documento privado fué subsanada por la contestación; y que no hubo sorpresa en la prueba. Si algún error hubo al declarar sin lugar la excepción previa, fué inofensivo.

■ ■ Los apelantes también dicen que la corte de distrito erró al declarar con lugar la acción reivindicatoria y

la reclamación de daños y perjuicios, y, por consiguiente, al conceder a los demandantes la cantidad de mil dólares en concepto de daños y perjuicios. Se arguye a este respecto que Antonio Monrozeau se desprendió del título de los terrenos en controversia el 11 de julio, 1911, y, por ende, que nada pasó a los demandantes al morir Monrozeau. La teoría de la demanda y del juez de distrito fué que el documento privado que otorgara Monrozeau en junio 16, 1911, no fué una venta condicional, sino una hipoteca. No hallamos error en esto.

La segunda cláusula del documento envuelve un traspaso. Empero, la intención de las partes fué garantizar el cumplimiento de una obligación preexistente. Esto aparece sufitemente de las cláusulas tercera y cuarta, que leen así:

"TERCERA.—Se establece el pacto que si el vendedor D. Antonio Monrozeau atendiese al pago de una obligación, suscrita por él el veinte y cinco del pasado abril, por cuatrocientos diez y seis dollars y sus intereses al doce por ciento anual, desde la fecha del mismo, el veinte y cinco de abril del próximo año de mil novecientos doce, más los gastos que ocasione el presente contrato, le otorgará el comprador o sus representantes, escritura de retroventa si dicha escritura la hubiese otorgado el vendedor al comprador Sr. Amador Machado.

"CUARTA.—El Sr. Monrozeau se obliga a otorgar al Sr. Amador y Machado escritura de venta, de acuerdo con lo contratado en este documento tan pronto como el Sr. Amador lo exigiere de él, siendo de cuenta del vendedor todos los gastos que se ocasionen por este concepto. Y para constancia de que así lo han convenido, firman el presente en Camuy, P. R., ante los testigos D. José Isabel Barrios y D. Francisco Velázquez, mayores de edad y vecinos de Camuy."

La obligación preexistente a que se refiere la llamada venta condicional era un pagaré que no fué entregado por Amador al otorgarse el contrato posterior. Difícilmente podría sostenerse que si Amador hubiese instado pleito sobre ese pagaré al vencimiento de éste, Monrozeau pudiera haber alegado con éxito la novación y la confusión (*merger*) como defensa. Cuando Amador basó su convenio relativo a la

retroventa en la condición de que se satisficiera el pagaré, y retuvo la posesión del mismo, imprimió a la transacción posterior el carácter de una hipoteca dada en garantía del pagaré, más bien que de una venta condicional.

El otorgamiento y entrega del pagaré fueron precedidos de ciertas negociaciones para un préstamo. El mismo Amador declaró sobre la solicitud del préstamo, respecto a varias entrevistas en torno al mismo, y en relación con el otorgamiento y entrega del pagaré. Da como motivo de su insistencia en una venta condicional en vez de una hipoteca, el poco valor de los terrenos y la consiguiente necesidad de un margen suficiente para sufragar el costo de los procedimientos judiciales. Explica la tercera cláusula del contrato como una concesión hecha en beneficio de Monrozeau, quien insistía en un préstamo evidenciado por un pagaré. Manifiesta que retuvo el pagaré porque creyó conveniente hacerlo así. Admite que esperaba que el valor de los terrenos aumentara. En 1910 o en 1911, fueron tasados para fines de contribución en trescientos cincuenta dólares, y en 1914, en mil cincuenta. Más tarde, parte de esos terrenos fué dividida en solares y vendida a cincuenta centavos o a dólar el metro. Amador nunca entró en posesión. Los terrenos pasaron directamente de poder de la parte demandante al de la persona que le compró a Amador, en octubre de 1912. En la llamada venta condicional no hubo el designio de efectuar un arrendamiento, ni Monrozeau se propuso pagar canon alguno. La obligación que él asumió fué la de satisfacer el principal de un pagaré ya otorgado y entregado, con intereses al tipo del 12 por ciento desde la fecha de su otorgamiento, y no desde la fecha de la llamada venta condicional.

Pudieran enumerarse otros hechos y circunstancias para demostrar la interpretación práctica que al último convenio dieron las partes contratantes, según lo indica su conducta posterior, especialmente la de Amador.

En el caso de *Monagas* v. *Albertucci,* 235 U.S. 81, 83, la Corte Suprema, por voz de su Juez Presidente Sr. White,

cita de la opinión de este tribunal, 17 D.P.R. 712, 715, lo siguiente:

"Todo el caso en realidad gira sobre la cuestión de si el documento escrito objeto de controversia era una hipoteca o una venta condicional. Si es lo segundo, deben cumplirse las condiciones del mismo; si es lo primero, debe permitírsele al demandante que devuelva el dinero recibido haciéndole un traspaso de los bienes. La verdadera intención de las partes en el momento de otorgar el documento escrito, es la que debe regir en la interpretación que le den los tribunales. Esto debe averiguarse de las circunstancias que concurrieron en la transacción y del texto del documento mismo. La norma correcta, en los casos en que tenga aplicación, es la continuación de la existencia de una deuda u obligación entre las partes. De existir tal deuda u obligación, la venta puede considerarse meramente como una garantía de la deuda o como indemnización de una obligación Por el contrario, si no existe deuda u obligación, entonces la transacción no es una hipoteca y sí meramente una venta con pacto de retracto dentro de un tiempo determinado. Aun cuando cada caso debe contener sus propios hechos especiales, ciertas circunstancias se consideran como importantes, y los tribunales las consideran como aclarando la intención real de las partes y la naturaleza de tales transacciones; tales son la existencia de un contrato colateral ejecutado por el cedente para el pago de dinero al cesionario, su obligación de pagar interés, que el precio de la venta sea inadecuado, que el cedente quede todavía en posesión de los bienes traspasados, y cualquier negociación o solicitud de un préstamo con anterioridad o durante la transacción que dió lugar al traspaso.

"La doctrina americana sobre este punto no difiere materialmente de los principios enunciados en nuestro Código Civil. 3 Pomeroy's Equity Jurisprudence, párrafos 1194 y 1195. Código Civil de Puerto Rico, párrafo 1248, 1249, 1250, 1348, 1410, 1421.''

Véanse además los casos de *Cuyugan* v. *Santos*, 34 Jurisprudencia Filipina 104; *Villa* v. *Santiago,* 38 id. 166; *Cuyugan* v. *Santos,* 39 id. 995; y *Macapinlac* v. *Gutiérrez Répide,* 43 id. 806.

■ ■ Otros señalamientos de menor importancia son: Que la corte de distrito erró al no resolver que la acción reivindicatoria había prescrito, de acuerdo con el artículo 1268

del Código Civil; al no decidir que la acción para anular ciertos procedimientos seguidos en la Corte Municipal de Camuy habían prescrito, a tenor de lo dispuesto en ese mismo artículo; al no llegar a la conclusión de que los demandados en el procedimiento últimamente aludido—aquí demandantes—fueron debidamente emplazados y notificados de la sentencia dictada en la dicha corte municipal; al resolver que, por carecer la corte municipal de jurisdicción sobre el asunto de tal procedimiento, el contrato de venta otorgado en junio 16, 1911, era absolutamente nulo; y al declarar que el procedimiento habido en dicha corte municipal era írrito y nulo por no tener esa corte jurisdicción sobre la materia.

La acción de nulidad a que alude el artículo 1268 del Código Civil es una para invalidar contratos anulables. El período de cuatro años allí prescrito no impide una acción reivindicatoria para recobrar bienes inmuebles cuya posesión se ha perdido mediante un procedimiento judicial nulo. *Rodríguez Soler* v. *Alonso,* 37 D.P.R. 344; *Solá* v. *Castro,* 32 D.P.R. 804; *Oliver* v. *Oliver,* 23 D.P.R. 181; *López* v. *Quiñones,* 30 D.P.R. 342.

La demanda sólo alega dos causas de acción. La segunda se dirige a la cuestión de daños y perjuicios. Los elementos esenciales de la primera son, que los demandantes adquirieron el título de los terrenos en litigio por herencia de su finado padre Monrozeau Alcaide, y que los demandados retienen y detentan la posesión de esas tierras sin título o derecho alguno. Anticipándose a una posible defensa, los demandantes también exponen ciertos hechos concernientes a los procedimientos habidos en la corte municipal y que se alega son nulos por falta de jurisdicción. Por consiguiente, la primera causa de acción de los demandantes no surge de la invalidez del procedimiento en la corte municipal. Aun si surgiera, el artículo 1268 del Código Civil no puede alegarse como impedimento. *Cruz* v. *Kuinlan,* 29 D.P.R. 887; *Irizarry* v. *Bartolomey,* 32 D.P.R. 924; *Suro* v. *Prado,* 21 D.P.R.

241, 250; y *Oliver* v. *Oliver,* 23 D.P.R. 181, 190. El procedimiento en la corte municipal fué una acción para obligar a los herederos de Antonio Monrozeau a otorgar una escritura de traspaso de las tierras descritas en la alegada venta condicional de junio 16, 1911, conforme a los términos de ese convenio. La viuda de Antonio Monrozeau compareció a nombre de sus hijos menores (demandados en aquel procedimiento y aquí demandantes) y otorgó escritura de traspaso a favor de Amador atemperándose a la sentencia dictada por la corte municipal, pero sin autorización de la corte de distrito. El juzgado municipal carecía de jurisdicción sobre el asunto en controversia, y el traspaso pretendido era nulo de toda nulidad. *García* v. *El Registrador,* 23 D.P.R. 426; *Agüeros* v. *El Registrador,* 28 D.P.R. 268; *Ex parte Sotomayor,* 24 D.P.R. 185; *Avilés* v. *El Registrador,* 17 D.P.R. 960; *Rosario* v. *Rucabado,* 23 D.P.R. 474. Si la corte de distrito erró al dejar de resolver que los demandados en la corte municipal (aquí demandantes) fueron debidamente emplazados y notificados de la sentencia que se dictó, el error fué inofensivo.

El juez de distrito no resolvió que la llamada venta condicional de 1911 era absolutamente nula. Él interpretó ese documento como un contrato de la naturaleza de una hipoteca. En la demanda se alegó que era un gravamen. Los demandados pudieron haber radicado una contrademanda pidiendo la ejecución del gravamen y la venta de la propiedad. En lugar de sostener ese derecho, prefirieron la victoria o la derrota sobre la teoría de una venta condicional, de la validez del procedimiento en la corte municipal y de la prescripción de la causa de acción de los demandantes. La posición así tomada era insostenible, y una sentencia a favor de los demandantes fué el resultado.

*Esa sentencia debe ser confirmada.*

El Juez Asociado Señor Texidor no intervino.

El Juez Asociado Señor Aldrey está conforme con la sentencia.

EN RECONSIDERACIÓN

San Juan, Puerto Rico, febrero 13, 1930

 Los apelantes solicitan la reconsideración en lo relativo a la prescripción, los daños y perjuicios y las costas. La segunda y tercera de estas tres cuestiones son demasiado tardías al ser levantadas por primera vez en una moción de reconsideración. En lo que a la primera cuestión se refiere los apelantes descansan en los casos de *Molina* v. *Hernández,* 33 D.P.R. 182, y *Collado Heredia* v. *Sucesión Garau,* 36 D.P.R. 2.

 En el primero de estos dos casos se admitió que la acción era sobre nulidad dentro del significado del artículo 1268 del Código Civil y así fué tratada en la opinión.

La única cuestión sometida y resuelta fué respecto a cuándo empezaba a contarse el período estatutorio. En el caso de Collado la acción se describe en el encabezamiento como de nulidad de escritura, devolución de cantidad y daños y perjuicios. Se solicitaba una sentencia en la siguiente forma: (*a*) declarando nula cierta escritura de venta con pacto de retro y ordenando su cancelación en el registro de la propiedad; (*b*) ordenando que la demandada entregue la posesión; (*c*) ordenando a la demandada que pagara a los demandantes la suma de $700 cobrados por concepto de arrendamiento, y (*d*) condenando a la demandada a pagar la suma de dos mil dólares como daños y perjuicios, más las costas, desembolsos y honorarios de abogado. En la opinión se exponen las alegaciones esenciales de la demanda. Prácticamente, la única cuestión sometida o resuelta fué la de si el contrato en cuestión era anulable o inexistente.

En ninguno de estos casos se llamó la atención de este tribunal a distinción alguna entre la acción de nulidad a que se refiere el artículo 1268 *supra,* y una acción en que se solicita que se declare que una escritura de enajenación es una hipoteca.

El artículo 1268 lee como sigue:

"Artículo 1268. La acción de nulidad sólo durará cuatro años.

"Este tiempo empezará a correr:

"En los casos de intimidación o violencia, desde el día en que éstas hubiesen cesado;

"En los de error, o dolo, o falsedad de la causa, desde la consumación del contrato;

"Cuando la acción se dirija a invalidar contratos hechos por mujer casada, sin licencia o autorización competente, desde el día de la disolución del matrimonio;

"Y cuando se refiera a los contratos celebrados por los menores e incapacitados, desde que salieren de tutela."

Los varios incisos que fijan el término en que empieza a correr el período estatutorio, así como los artículos precedentes y subsiguientes contenidos en el mismo capítulo indican en forma general la clase de acción que tuvieron en mente los que redactaron el código.

En el presente caso la demanda no se funda en la teoría de fraude, coacción o engaño o en ninguno de los fundamentos usuales en una acción de nulidad. Según dijimos al comenzar nuestra opinión, se trata de una acción reivindicatoria. Como indicamos también en la opinión, la naturaleza del documento interpretado por la corte aparece suficientemente de la faz del mismo. En tanto en cuanto pueda decirse que la causa de acción de los demandantes depende de la verdadera naturaleza del contrato en cuestión, la acción es una en que se solicita que la corte interprete un contrato y determine la naturaleza del mismo. Así considerada, no se trata de una acción de nulidad sino de una en que se solicita que se declare que un contrato es en realidad lo que parece ser por su propia faz. Si se considera que la acción es una en que se pide se decrete que una escritura de enajenación es una hipoteca, ello no obstante, no es una acción de nulidad sino una acción para que se declare que un contrato es lo que en realidad fué desde el principio de acuerdo con la intención de las partes revelada por prueba *aliunde* que suplementaba y explicaba los términos del documento.

La acción no estaba prescrita por el transcurso de cuatro

años y *la moción de reconsideración debe ser declarada sin lugar.*