VARDAMAN C. WILCOX y OCTAVIO ISMAEL DÁVILA, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN PRIMERA, recurrido.

Núm. 1198.—*Sometido:* Noviembre 4, 1946. *Resuelto:* Junio 18, 1947.

---

*Heriberto Torres Solá,* abogado de los recurrentes; el registrador re-
currido compareció por escrito.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Elías B. Wilcox y su esposa, Vardaman C. Wilcox, adquirieron de William F. Lippitt 23 parcelas de terreno en pago de un préstamo hipotecario. Cada parcela estaba compuesta de uno o más solares. La parcela "J" consistía de seis solares, uno de los cuales era el número 82, aquí envuelto. La escritura de traspaso, a la cual se unió una copia del plano de urbanización de las 23 parcelas, se inscribió a favor de Wilcox y su esposa.

Los esposos Wilcox, como dueños de estas parcelas, convinieron en un plan para disponer de los solares, según el cual ellos los venderían, por un precio estipulado, a aquellas personas que los poseyeran como arrendatarias y hubieran edificado sobre los mismos. Este plan se continuó hasta el fallecimiento de Elías B. Wilcox, ocurrido el 27 de octubre de 1942.

A Wilcox le sobrevivieron su esposa y dos hijas, Adah Louise y Mary Winifred. En su testamento él designó a sus dos hijas como sus únicas y universales herederas. Mary Winifred falleció en California en julio 28, 1943, sobreviviéndola dos hijos, Brian Arthur y Mary Winifred O'Neill Wilcox.

La herencia de Wilcox pasó a su esposa supérstite y a sus dos hijas en la proporción de una mitad para la primera y una cuarta parte para cada una de las dos hijas. Brian Arthur y Mary Winifred O'Neill, hijos de Mary Winifred Wilcox, fueron declarados únicos herederos de ésta, habiendo el esposo de ella renunciado todos sus derechos a favor de los mismos. Parece que no se hizo partición de herencia alguna hasta el momento en que se trasmitió el solar aquí envuelto a Octavio Ismael Dávila y esposa.

Ante la Corte de Distrito de San Juan se instó un procedimiento de administración judicial en relación con los bienes que Mary Winifred Wilcox dejara en Puerto Rico y Vardaman C. Wilcox fué nombrada administradora. Esta última radicó

luego una solicitud interesando autorización judicial para otorgar escrituras de compraventa a nombre de los menores Brian Arthur y Mary Winifred O'Neill en relación con ciertos solares—entre ellos el núm 82 aquí envuelto—en cuanto a la participación de una cuarta parte que los menores tenían en dichos solares, y para cancelar una hipoteca constituída a favor de Elías B. Wilcox y esposa para garantizar el precio aplazado de la compraventa de un solar que Elías B. Wilcox había vendido, también en cuanto a la participación de la cuarta parte de los menores en dicha hipoteca.

La solicitud alegaba el plan de Wilcox para vender los solares; que desde la fecha en que Wilcox adquirió los solares hasta el día en que murió, él y su esposa habían vendido 17 solares, que habían sido inscritos en el Registro; que con posterioridad a la muerte de Wilcox, la esposa supérstite y sus dos hijas Adah Louise y Mary Winifred aceptaron los contratos de compraventa celebrados por su padre y convinieron proseguir con el plan de venta mencionado en cuanto a los solares restantes.

La petición alegaba asimismo que había once solares que Wilcox había convenido vender a los arrendatarios que habían edificado sobre ellos; que éstos habían acordado adquirir de Wilcox dichos solares; que las escrituras de compraventa de los mismos están pendientes de ser otorgadas; y que uno de los solares lo es el número 82 aquí envuelto.

La solicitud también alegó que el precio de venta de los treinta y cinco solares en ella reseñados fueron fijados por Wilcox y su esposa; que dichos solares se trasmitieron por herencia a Mary Winifred y a Adah Louise Wilcox sujetos a la obligación de Wilcox de venderlos por ese precio, obligación que se trasmitió a Brian Arthur y Mary Winifred O'Neill Wilcox en cuanto a la participación de una cuarta parte heredada por ellos de su señora madre Mary Winifred Wilcox; que los precios así fijados eran razonables y habían sido aceptados por la esposa supérstite, Wardaman C. Wilcox, en

cuanto a su participación de una mitad en los bienes gananciales, y por Adah Louise en cuanto a su participación de una cuarta parte; que en la liquidación de la contribución de herencia de Elías B. Wilcox el Tesorero Insular retasó dichos solares y esos precios excedían la tasación oficial de los solares para los fines de la contribución de herencia; y que el otorgamiento de las escrituras de compraventa en cuanto a la participación de una cuarta parte que los menores tienen en dichos solares es necesaria, útil y beneficiosa a los intereses de los menores.

La corte resolvió que las alegaciones de la petición habían quedado establecidas y ordenó a la administradora que otorgara escrituras de compraventa de los solares 1 al 35 en lo que concernía a la participación de una cuarta parte indivisa que en dichos solares correspondía a Mary Winifred Wilcox a favor de las personas mencionadas en la petición que hubieran edificado sobre los mismos, o a quienes representen sus derechos, previo el pago por los adquirentes de las cantidades que adeuden como saldo o como precio de los solares, y para el caso de que alguna de estas personas desistiera de ello o no interesara adquirirlos, la orden autorizó a la administradora judicial para vender los solares en pública subasta por un precio no menor del consignado en la petición. La orden judicial expresa que el solar núm. 82 había sido vendido por Wilcox a Angel Elías por el convenido precio de $300. el cual había sido pagado en su totalidad.

De conformidad con esta autorización judicial, la administradora otorgó escritura de compraventa del solar núm. 82 a favor de Dávila y su esposa, quienes, como luego se verá, son los causahabientes de Elías. El registrador se negó a inscribirla. Su primer fundamento para ello fué que para la segregación del solar núm. 82, los recurrentes no han obtenido la aprobación de la Junta de Planificación, Urbanización y Zonificación.

La contención original del recurrido fué al efecto de que al llevar a cabo Wilcox y su esposa la lotificación con

anterioridad a la vigencia de la Ley de Planificación, Urbanización y Lotificación, ellos agruparon con otros el solar núm. 82, aquí vendido a Dávila, para formar una finca separada; que el solar núm. 82 se segrega ahora de nuevo; y que como esa segregación se lleva a cabo ya vigente la Ley mencionada, la aprobación de la segregación por la Junta es un requisito previo para la inscripción.

Más tarde, por estipulación, el registrador aceptó que el solar núm. 82 nunca formó parte del grupo de solares expresados en su alegato; que dicho solar núm. 82 forma parte de otra parcela de terreno integrada por ese y cuatro solares más, con un área de 1128.90 metros cuadrados; que esta parcela de terreno es parte de la finca núm. 4,521, inscrita al folio 37 vuelto del Tomo 154 de Santurce Norte; y que el solar núm. 82 no aparece que haya sido agrupado a ninguna otra propiedad o que esté inscrito como una finca separada.

El solar núm. 82 se identifica como el número 2 en el primer Por Cuanto de la orden dictada por la corte de distrito en los procedimientos de autorización judicial. También se le identifica en el quinto Por Cuanto como que fué vendido a Angel Elías por precio de $300, y que el mismo ya había sido pagado totalmente. El solar número 82 se describe en la escritura de compraventa a favor de Dávila de igual modo que en la orden de la corte. La escritura expresa que el solar núm. 82 es uno de un grupo descrito bajo el núm. 10 en otra escritura de junio 5, 1943, inscrita en el Registro de la Propiedad al tomo 154 de Santurce Norte, al folio 37 vuelto, finca número 4521, inscripción 17. Y el solar núm. 82 aparece en el plano de urbanización levantado en 1925, el cual se unió a la escritura de traspaso a Wilcox y esposa y se inscribió con la misma.

Es cierto que el solar núm. 82 forma parte de una parcela de terreno constituída por ese y por cuatro solares más. Pero el solar núm. 82 sin duda alguna aparece en el plano de urbanización original, que fué inscrito junto con la escritura

original de traspaso a Elías B. Wilcox y esposa, como unidad independiente; sobre el mismo se construyó una edificación antes de la fecha en que empezó a regir la Ley de Planificación; y los traspasos posteriores de éste consideran el solar 82 como una unidad separada bajo el plan original de urbanización. En síntesis, la lotificación que dió vida al solar 82 se hizo mucho antes de la fecha de la vigencia de la ley, sin que esté llevándose a cabo por vez primera mediante la escritura otorgada a favor de Dávila, cuya inscripción ahora se interesa. En tales circunstancias, Dávila no necesitaba obtener la aprobación de la Junta antes de que su escritura pudiera inscribirse. *Matos v. Junta de Planificación, Urbanización y Zonificación,* 66 D.P.R. 439. El primer fundamento del registrador, por tanto, no puede sostenerse.

El segundo fundamento del registrador se contrae sólo a su negativa a inscribir la escritura de traspaso a Dávila en tanto en cuanto por ella se transmite la participación de una cuarta parte que en el solar número 82 pertenece a los menores Brian Arthur y Mary Winifred O'Neill Wilcox.

El registrador admite que al conceder autorización para vender dicha participación, la orden de la corte expresa que Wilcox y su esposa habían convenido en vender varios solares, incluyendo el número 82. Pero él argumenta que los documentos complementarios presentádosle demuestran que esto no fué así y que, por el contrario, la venta del solar 82 de hecho tuvo lugar luego de haber fallecido Wilcox y su hija Mary Winifred, a la que sobrevivieron sus dos hijos menores Brian Arthur y Mary Winifred O'Neill; que la venta del solar núm. 82 se hizo, por tanto, por una sucesión de la cual estos menores eran parte; y que, por consiguiente, la corte de distrito carecía de autoridad para ordenar la venta de la participación de una cuarta parte perteneciente a los menores en el solar número 82, a no ser mediante subasta pública de conformidad con el artículo 579 del Código de Enjuiciamiento Civil o el artículo 159 del Código Civil, caso en el cual debía

darse cumplimiento a los artículos 614 al 616 del Código de Enjuiciamiento Civil. En apoyo de su criterio, el recurrido cita los casos de *Burset* v. *Registrador,* 49 D.P.R. 49 y *Aponte* v. *Registrador,* 56 D.P.R. 834.

El problema fundamental aquí envuelto es, por tanto, determinar si los documentos complementarios contradicen las conclusiones de la corte respecto a que Elías B. Wilcox y esposa, o luego de haber aquél fallecido, su esposa supérstite y sus dos hijas, habían convenido en vender el solar núm. 82 a Angel Elías por $300. En uno u otro caso, los causahabientes de Wilcox (su esposa y sus dos hijas) y los de Mary Winifred Wilcox (sus dos hijos menores) estaban obligados por el convenio y, por ende, obligados a ejecutar la escritura de compraventa. En lo que concierne a los menores aquí envueltos, el único requisito adicional bajo las circunstancias era la autorización judicial, que fué concedida en este caso, para otorgar la escritura. Véanse *Ex parte Sotomayor,* 24 D.P.R. 185; *Avilés* v. *Registrador,* 19 D.P.R. 365; *Monrozeau* v. *Amador,* 40 D.P.R. 132; *Menéndez* v. *Registrador,* 13 D.P.R. 191; *Maya Pérez* v. *Registrador,* ante, pág. 358. Mas si, contrario a las conclusiones de la corte, no hubo tal convenio previo, y el convenio y venta de conformidad con el mismo se hicieron por la Sucesión de la cual los menores eran partes, la contención del registrador en cuanto a ser aplicables al caso los artículos 614 al 616 del Código de Enjuiciamiento Civil parecería ser correcta.

Los documentos complementarios en que descansa el registrador son (1) una escritura de marzo 31, 1943, por la cual Ramón Fernández y su esposa vendieron y traspasaron a Angel Elías y esposa una casa "enclavada en solar de la Sucesión de E. B. Wilcox"; (2) una escritura de mayo 15, 1944, por la cual Angel Elías y esposa vendieron a Santiago Roldán la misma casa "enclavada en solar de la Sucesión de E. B. Wilcox"; (3) una escritura de abril 9, 1945 a virtud de la cual Roldán vendió al recurrente Dávila la casa, "en

solar comprado a la Sucesión de E. B. Wilcox, hoy pertene-
ciente al compareciente señor Roldán, pendiente de escri-
turarse.''

Pero se hace necesario examinar estos documentos com-
plementarios con mayor detenimiento. La declaración arriba
indicada, en cuanto al dominio se refiere, contenida en la úl-
tima escritura, aparece de la descripción de la propiedad. Sin
embargo, en la exposición que en dicha escritura se hace res-
pecto al título al solar, la escritura dice: ''El solar en que
enclava dicha casa fué comprado a la Sucesión Wilcox por
don Angel Elías y doña Beatriz Peña, anteriores dueños de
la casa aquí descrita, y por documento de fecha dos de abril
de 1945 (mil novecientos cuarenta y cinco) cedieron todos sus
derechos sobre el solar indicado al compareciente señor Rol-
dán, actual dueño de los mismos.'' Y cuando la escritura
expresa lo que de hecho en ella se transfiere, la misma pro-
vee que ''Don Santiago Roldán vende y Don Octavio Ismael
Dávila Rodríguez compra la casa descrita, juntamente con
todos los derechos sobre el solar indicado . . .''

Por tanto parece ser claro que Roldán no adquirió el solar
número 82 de la sucesión de Wilcox. Más bien estamos con-
vencidos, como lo estuvo la corte de distrito, de que hubo un
convenio para la compra del solar número 82 entre Elías y
Wilcox o los causahabientes de éste antes de la fecha en que
surgió el interés de los menores en el solar, y que Elías hizo
un traspaso suficiente de sus derechos a Roldán y Roldán a
Dávila. Toda vez que la sucesión de la cual los menores
eran parte venía obligada por el previo acuerdo de sus cau-
santes a traspasar el solar por el precio convenido, Dávila
tenía derecho al otorgamiento de la escritura aquí envuelta
traspasándole el solar número 82 según fué autorizado por
la orden de la corte.

Además, distamos de estar convencidos de que el re-
gistrador tuviera derecho en este caso a impugnar la validez
de la orden de la corte. Cuando la ''corte de distrito ha dic-

tado una resolución final, el registrador debe tenerla por bien y suficiente si la corte tenía jurisdicción y *el procedimiento seguido fué el marcado por la ley.*" *Herrero* v. *Registrador,* 63 D.P.R. 709, 712; *Valiente* v. *Registrador,* 63 D.P.R. 149; *Santos* v. *Registrador,* 64 D.P.R. 801. Si bien el registrador sostiene que no necesita acatar la orden de la corte por no haberse seguido el procedimiento prescrito por los artículos 614 al 616 del Código de Enjuiciamiento Civil, esos artículos, en vez del procedimiento seguido en este caso, se aplican tan sólo si aceptamos la versión que de los hechos hace el registrador más bien que como los halló probados la corte de distrito. El registrador no puede sustituir su criterio sobre los hechos por el de la corte de distrito y entonces basar su argumento en cuanto a cuál procedimiento deberá seguirse en un caso determinado sobre los hechos tal como él los concibe más bien que como fueron adjudicados por la corte de distrito.

Notamos que el registrador también sostiene que el solar debe primero inscribirse a nombre de Roldán para que la escritura de compraventa a favor de Dávila pueda ser luego inscrita. Artículo 20, Ley Hipotecaria. Mas lo que se vendió a Elías fué sólo el derecho a un traspaso. Él pagó el precio de compra, pero nunca obtuvo una escritura por razón del fallecimiento de Mary Winifred y de los posteriores procedimientos judiciales en relación con su muerte. Roldán asimismo adquirió el derecho a una escritura, pero no obtuvo ésta. La primera escritura del solar 82 fué, por tanto, la aquí envuelta, la que fué otorgada a favor de Dávila, quien era el sucesor de sus causantes en el derecho de éstos a la escritura. La escritura a favor de Dávila por consiguiente pudo ser propiamente inscrita a su nombre sin la previa inscripción a nombre de Roldán.

*La nota del registrador será revocada y se le ordenará a éste que inscriba la escritura aquí envuelta sin defecto alguno.*