Antonio Vélez Alvarado y Ramón Vélez Alvarado, demandantes y recurrentes, *v.* Juan Ramón Ramos et al., demandados y recurridos.

*Número:* R-63-300     *Resuelto:* 20 de mayo de 1968

*Arturo Ortiz Toro, Manuel Abreu Castillo* y *S. L. Lagarde Garcés,* abogados de los recurrentes; *Héctor González Blanes,* abogado de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau, Dávila y Ramírez Bages.

PER CURIAM: Ramón Vélez Alvarado inició ante la anterior Corte de Distrito de Arecibo, bajo el número R-3443, una acción contra Juan Ramón Ramos y su esposa María Piñot sobre reivindicación, nulidad de traspaso y otros extremos.

Alegó en síntesis, que en virtud de varias compras adquirió una finca de 378 cuerdas de terreno situada en el barrio Coto Norte del municipio de Manatí; que siendo dueño y estando en posesión de dicha finca, la misma fue vendida mediante procedimiento por el Colector de Rentas Internas de Manatí a don Félix del Llano González, expidiéndole certificado de compra el día 14 de enero de 1933; que posteriormente y con anterioridad al 10 de enero de 1935 el deman-

dante convino, a través de su apoderado don Antonio Vélez Alvarado, con don Rafael Arcelay y su entonces esposa doña Consuelo Cabinero, en que don Rafael Arcelay prestaría al demandante la suma de $4,170.19 para que dicho Félix del Llano traspasase directamente a los entonces esposos Arcelay-Cabinero la indicada finca, en el entendido que el demandante seguiría siendo dueño de dicha propiedad, y al efecto, dicho Félix del Llano traspasó nominalmente el título de la finca a dichos esposos por la escritura número uno otorgada el día 10 de enero de 1935 ante el notario don Francisco Fernández Cuyar, inscribiéndose en el Registro de la Propiedad de Arecibo en cuanto a una cabida de 320 cuerdas y denegándose en cuanto a 58 cuerdas, por no haberse inscrito a favor de persona alguna; pero continuando el demandante siendo dueño y usufructuario a través de su dicho apoderado de la referida finca, habiendo sido entregada la referida suma de dinero por los esposos Arcelay-Cabinero a Félix del Llano en calidad de préstamo a don Ramón Vélez Alvarado. Se alega además que la finca de referencia tenía un valor aproximado de $20,000.00.

En el hecho quinto de la demanda se alega también que en 9 de mayo de 1934 y antes de esa fecha el demandante era dueño de una finca de 78 cuerdas de terreno, que se describe; que la referida finca de 78 cuerdas fue traspasada a Rafael Arcelay por el demandante representado por su apoderado Antonio Vélez Alvarado en forma nominal y para garantizar un préstamo por la suma de $1,075.00 que le hiciera Arcelay pero que el demandante continuó siendo dueño y poseedor de dicha finca.

En el hecho séptimo se alega que convino también, a través de su apoderado, con los esposos Arcelay Cabinero, traspasar bajo el mismo plan nominalmente y como garantía colateral pero en el entendido de que conservaría la posesión y pleno dominio de las parcelas que se describen en la escritura Núm. 1 otorgada en Manatí en 9 de febrero de 1938

ante el notario don Francisco Fernández Cuyar, las cuales se describen también en el referido hecho séptimo de la demanda bajo las letras a, b, c, d, e y f; que el traspaso de esas fincas se hizo en forma nominal y para garantizar a los esposos Arcelay Cabinero la suma de $2,000.00, teniendo todas dichas parcelas al momento del traspaso un valor no menor de $10,000.00.

En el hecho noveno se alega que todas las fincas descritas en la demanda fueron traspasadas bajo el mismo plan a los demandados Juan Ramón Ramos y María Piñot por la escritura Núm. 23 de fecha 20 de marzo de 1940 otorgada ante el notario don Adolfo García Veve y en cuya escritura el demandado Juan Ramón Ramos agrupó todas las fincas compradas en una sola finca que con el Núm. 2588 fue inscrita en el Registro con una cabida total de 569.65 cuerdas; que habiendo estado adeudando el demandante a don Rafael Arcelay una suma de alrededor de $12,000.00 por concepto de capital e intereses con motivo de los préstamos anteriormente hechos y deseando pagar dicha deuda a los esposos Arcelay Cabinero, el demandado Juan Ramón Ramos ofreció al demandante por conducto del apoderado de éste, Antonio Vélez Alvarado, facilitar dicha suma en calidad de préstamo y convinieron que el demandante traspasaría las fincas ya agrupadas en garantía de dicha suma y sus intereses al tipo del 7% anual y que el traspaso se hizo nominalmente para fines de garantía colateral, pero que el demandante conservó la posesión y pleno dominio de la finca agrupada; que el demandado Juan Ramón Ramos convino que traspasaría al demandante dichas propiedades tan pronto éste pagase el importe de la deuda con los intereses acumulados; que la propiedad a la fecha del traspaso valía más de $30,000.00; que se convino que el demandante continuaría en la posesión, disfrute y explotación de la finca agrupada, a través de su apoderado Antonio Vélez Alvarado.

En el hecho decimotercero de la demanda se alega que el demandante continuó en la posesión y disfrute de la finca y pagó los intereses de los primeros tres meses, pero que el demandado, a partir de esa fecha, se introdujo paulatinamente hasta el punto de haber ocupado y detentado la posesión de la finca agrupada contra la voluntad del demandante, con excepción de 78 cuerdas que también amenaza usurpar; que el demandado ha segregado de la finca agrupada tres parcelas, una de 4.44 cuerdas pasadas al Municipio de Manatí, otra de 9.25 cuerdas vendidas al Pueblo de Puerto Rico y otra de 3 cuerdas vendidas a don Juan Cortiella y que todas dichas tres parcelas fueron vendidas por un precio total de $11,200.00.

En una segunda causa de acción se reclaman frutos y daños.

Los demandados contestaron la demanda negando sus hechos esenciales y adujeron varias defensas. En una de estas defensas alegaron que en marzo de 1945 Antonio Vélez Alvarado radicó una demanda de reivindicación contra este mismo demandado bajo el número R-1618 en la cual alegaba el hecho incierto de ser dicho Antonio Vélez Alvarado dueño de las fincas descritas en dicha demanda y que en julio de 1946 el mismo Antonio Vélez Alvarado radicó otra acción de interdicto para recobrar y retener la posesión de la finca que se describe en el hecho quinto de la demanda radicada por Ramón Vélez Alvarado.

Por orden del tribunal los tres casos fueron consolidados y por resolución de abril de 1948 se ordenó la sustitución de Antonio Vélez Alvarado por los miembros de su sucesión integrada por sus hijos Antonio Vélez Tinajero y Dolly Cecilia Vélez y su viuda Cora Ramos.

La vista de estos casos comenzó a celebrarse el día 3 de mayo de 1949 ante el entonces Juez de Distrito, Hon. Antonio Lens Cuena. Después de varias vistas quedó pendiente su

continuación y en dicho intervalo enfermó y falleció el Juez Lens Cuena.

La vista del caso se celebró finalmente ante el juez sentenciador. Se presentó abundante prueba documental y testifical. Se admitió la transcripción de los testimonios de algunos de los testigos que habían declarado ante el Juez Lens Cuena. También se admitió la deposición tomada al testigo Rafael Arcelay.

El tribunal de instancia dictó sentencia declarando sin lugar las demandas en los tres casos, luego de formular las siguientes

"CONCLUSIONES DE HECHO

1. Que la finca de 378 cuerdas que se describe en el hecho primero de la demanda del caso R-3443 para la fecha en que se radicó dicha demanda era propiedad de Ramón Vélez Alvarado quien la adquirió a virtud de distintas compras siendo la última parte comprada la que aparece descrita en la escritura #76 de 3 de agosto de 1909, otorgada ante el Notario Don José G. Torres.

2. Que la finca a que se refiere el hecho primero arriba expuesto fue subastada en procedimiento de apremio por deuda de las contribuciones territoriales al estado, siendo subastada en la subasta efectuada para tal propósito por el comerciante de Manatí Don Félix del Llano González, quien ofreció por la misma la suma de $1,563.84.

3. Que se adjudicó la subasta a Félix del Llano González quien recibió el certificado de compra del Colector de Rentas Internas de Manatí el día 14 de enero de 1933.

4. Que Félix del Llano González vendió la finca de 378 cuerdas que había subastado, según se refiere en los hechos segundo y tercero precedentes, a los esposos Rafael Arcelay y Consuelo Cabinero por la suma de $4,170.19 en virtud de la escritura #1 de fecha 10 de enero de 1935, otorgada ante el notario Francisco Fernández Cuyar.

5. Que el día 9 de mayo de 1934, Antonio Vélez Alvarado, en su carácter de apoderado de su hermano Ramón Vélez Alvarado, demandante en el caso R-3443, vendió a Doña Consuelo Cabinero asistida de su esposo Don Rafael Arcelay una finca de

78 cuerdas, sita en el Barrio Cotto de Manatí, según consta de la escritura #2, otorgada ante el Notario Don Rafael Palacios Rodríguez. Esta venta se efectuó por la cantidad de $2,000.00, de los cuales los compradores pagaron al vendedor Ramón Vélez Alvarado, por conducto de su apoderado Antonio Vélez Alvarado, la suma de $950.00 y se reservaron la suma de $1,050.00 para redimir en su día una hipoteca que gravaba la finca comprada.

6. Que en 9 de febrero de 1938 el demandante Ramón Vélez Alvarado, representado por su apoderado Antonio Vélez Alvarado, vendió a los esposos Arcelay Cabinero las parcelas (a), (b), (c), (d), (e), (f) y (g) compuestas de 10 cuerdas, 15 cuerdas, 32 cuerdas, 20.98 cuerdas, 28 cuerdas, 7.67 cuerdas y 70 cuerdas respectivamente, describiéndose las primeras 6 fincas en el hecho séptimo de la demanda del caso R-3443, según consta todo ello de la escritura #1 de esa misma fecha otorgada ante el Notario Francisco Fernández Cuyar.

7. Que todas las fincas o parcelas arriba descritas en el hecho sexto precedente que suman un total de 183.65 cuerdas se las vendió el demandante Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado a los esposos Arcelay Cabinero por la suma total de $1,550.00, de los cuales los esposos Arcelay Cabinero entregaron al apoderado del demandante Antonio Vélez Alvarado la suma de $500.00 y se reservaron la suma de $1,050.00 para redimir una hipoteca que por igual cantidad gravaba la finca descrita bajo la letra G, a favor de las señoritas Cecilia y Lucila Dávila.

8. Que en la referida escritura #1 se consignó, para fines de registro, el valor individual de cada finca vendida como sigue:

| | | | |
|---|---|---|---|
| Finca | A | — | $150.00 |
| " | B | — | 200.00 |
| " | C | — | 200.00 |
| " | D | — | 200.00 |
| " | E | — | 150.00 |
| " | F | — | 50.00 |
| " | G | — | 600.00 |

9. Que los esposos Arcelay Cabinero vendieron todas las fincas que habían comprado a Félix del Llano González y a

Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado en distintas fechas a los demandados Juan Ramón Ramos y María Piñot, según consta de la escritura #23 de fecha 20 de mayo de 1940, otorgada ante el Notario Don Adolfo García Veve.

10. Que todas esas fincas fueron agrupadas y pasaron a formar la finca #2588, con una cabida de 569.65 cuerdas.

11. Que posteriormente, la finca agrupada a que se refiere el hecho décimo precedente fue mensurada por el Ingeniero Carmelo Muñoz en junio de 1941, resultando con una cabida total de 351.13 cuerdas.

12. Que Rafael Arcelay tomó posesión y entró en el disfrute de las fincas compradas visitando las mismas y designando un mayordomo de apellido del Valle para que administrase y atendiese las mismas a su nombre.

13. Que Rafael Arcelay allá por algún día entre los años 1938 ó 1939 juró una denuncia contra Antonio Vélez Alvarado por razón de que éste había dispuesto el corte de espeques de la finca de Arcelay sin su autorización, archivándose, finalmente, la denuncia a virtud de arreglo efectuado con la intervención del entonces Alcalde de Manatí.

14. Que los demandados al adquirir las fincas de Rafael Arcelay y su esposa procedieron a tomar posesión de las mismas designando a Juan Torres Perales como su mayordomo en dichas fincas.

15. Que el demandado Juan Ramón Ramos tan pronto entró en posesión y dominio de la finca comprada a través de su mayordomo Juan Torres Perales y obreros procedió a limpiar la finca y reparar las cercas para echar ganado y sembrar pasto y de la misma manera continuó autorizando a Antonio Vélez Alvarado, según lo había autorizado antes Rafael Arcelay para que continuara ocupando la casa en donde había vivido y cultivase dos pequeños predios de terreno, contiguos a la referida casa en donde había sembrada caña que cultivaban Antonio Vélez Alvarado y su esposa Cora.

16. Que Rafael Arcelay había conocido hacía mucho tiempo a Cora, desde que ésta vivía en Santa Isabel y a través de ella vino en conocimiento de Antonio Vélez Alvarado, con el cual mantuvo desde entonces buena amistad.

17. Que Rafael Arcelay había adquirido, además de las fincas compradas a Félix del Llano González y a Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado otra finca de 138 cuerdas del Banco Federal y que cultivaba con toronjas al 50% con Orestes Ramos.

18. Que para mediados del año 1939–1940, Rafael Arcelay había resuelto deshacerse de todas sus propiedades incluyendo las que poseía en la zona de la capital y ofreció las fincas envueltas en este caso a distintas personas.

19. Que entre esas personas a quien Rafael Arcelay había ofrecido en venta las fincas de este caso se encontraba Antonio Vélez Alvarado con quien habló informándole de su propósito de vender sus propiedades y pidiéndole a Vélez Alvarado la suma de $13,000.00 y el pago de contribuciones por dicha finca.

20. Que Antonio Vélez Alvarado hizo algunas gestiones encaminadas a conseguir el dinero con el cual comprar la finca y a tal efecto para allá para el 19 de junio de 1939 solicitó un préstamo del Banco Federal por la suma de $12,000.00, manifestando bajo juramento querer el dinero del préstamo para comprar una finca de 378 cuerdas perteneciente, según la solicitud, a Consuelo Cabinero de Arcelay, que es la misma finca que perteneció a Ramón Vélez Alvarado y que remató en procedimiento de apremio Félix del Llano González, quien más tarde la vendió a Consuelo Cabinero de Arcelay.

21. Que Antonio Vélez Alvarado, apoderado del demandante en el caso R-3443 Ramón Vélez Alvarado, radicó demanda de reivindicación, nulidad y otros extremos contra el demandado Juan Ramón Ramos reclamándole una finca de 192.40 cuerdas que había adquirido Antonio Vélez Alvarado por donación de Doña Dolores Vélez Escobar en el 1892 que había sido rematada por contribuciones y adjudicada en la subasta celebrada a Juan Ramón Ramos. Esta acción que lleva el número R-267 del antiguo Tribunal de Distrito de Arecibo llegó en su tramitación hasta el Hon. Tribunal Supremo de Puerto Rico.

22. Que Don Antonio Vélez Alvarado compareció en el caso R-1618 del antiguo Tribunal de Distrito de Arecibo en fecha 15 de marzo de 1945 por conducto de su abogado Pedro E. Anglade y radicó acción contra Juan Ramón Ramos interesando la reivindicación y daños y perjuicios de la misma finca que se describe en el hecho primero de la demanda del caso R-3443.

23. Que en la acción número R-1618 Antonio Vélez Alvarado alegó ser de su propiedad la finca que ya con la descripción que se le dió al agruparse de acuerdo con la escritura #23 de 20 de mayo de 1942 y bajo el número 2588 aparecía inscrita en el Registro de la Propiedad como perteneciente al demandado Juan Ramón Ramos.

24. Que en el hecho segundo del caso R-1618, consolidado para vista con los casos R-3443 y R-3381, Antonio Vélez Alvarado dió una versión distinta a la que da como apoderado de Ramón Vélez Alvarado en el caso R-3443 respecto a como se efectuó el convenio con Félix del Llano González al éste adquirir la finca en el remate.

25. Que igualmente Antonio Vélez Alvarado en el caso R-1618 alegó haber hecho un préstamo a Consuelo Cabinero de Arcelay por necesitar más dinero y alegó que convino con Félix del Llano González que éste le pasase la finca a la Sra. Consuelo Cabinero de Arcelay en garantía del préstamo, por lo que Félix del Llano González le pasó la finca a su nombre, pero bajo el entendido tanto de Félix del Llano González como de Consuelo Cabinero de Arcelay que la finca era de Antonio Vélez Alvarado.

26. Que en el hecho cuarto del caso R-1618, el demandante Antonio Vélez Alvarado alega que el demandado en ese caso R-1618 y demandado también en el caso R-3443, lo convenció para que le pasase a su nombre la finca de 569.65 cuerdas por $12,000.00 que Juan Ramón Ramos pagó a los esposos Arcelay, pero bajo el entendido de que la finca era de Antonio Vélez Alvarado.

27. Que en ese mismo hecho cuarto del caso R-1618 Antonio Vélez Alvarado alega que por los intereses el demandado Juan Ramón Ramos tomaría posesión de la finca, con excepción de una parcela de 80 cuerdas que el demandante tenía bajo cultivo de caña y otros frutos.

28. Que el caso R-1618 permaneció radicado en Corte sin que el demandante efectuara acción alguna para continuarlo hasta que, fué revivido en virtud de orden de 21 de noviembre de 1950, expedida por el Juez Antonio Lens Cuena y consolidado con los casos R-3443 y R-3381, que se ha dicho.

29. Que por la Autoridad de Tierras de Puerto Rico en el mes de julio de 1946, se tasó la finca de este caso según quedó

agrupada y reducida en su cabida por mensuras que se le hicieron en $14,000.00.

30. Que posteriormente se aumentó esa tasación a $20,000.00, debido a la localización de la finca que le daba un valor adicional a lo que la misma tenía si se consideraba únicamente su valor agrícola.

El testigo Félix del Llano González declaró en dos ocasiones en este proceso. La primera vez ante el Hon. Juez Antonio Lens Cuena y una segunda vez ante este Juez. Su testimonio ante el Juez Lens Cuena se transcribió y el mismo aparece a las páginas 69 a 149 de dicha transcripción. Esa declaración, con la cual se confrontó al testigo es el Exhibit 21 del demandado. También Félix del Llano González prestó una deposición a petición del demandante y por disposición del Tribunal. Esa deposición es el Exhibit D del demandante en la vista celebrada ante el Juez Antonio Lens Cuena. Este testigo Félix del Llano González daba la impresión de estar realizando un intenso esfuerzo mental en la búsqueda de las contestaciones que debía dar a las preguntas que se le hacían. Su recordación no era siempre feliz y se percibe en todas sus declaraciones gran perplejidad para situarse francamente en una afirmación categóricamente de hechos esenciales.

Ante este Juez el testigo declaró que Ramón Vélez Alvarado no intervino en la venta de las fincas a Arcelay; que los $4,000.00 y pico se los pagó Antonio Vélez Alvarado; que al firmar la escritura no le entregaron dinero alguno y que solamente se firmó la escritura; que no recibió nada de Arcelay; que el dinero lo recibió antes. A preguntas del abogado del demandado en su declaración ante el Juez Lens Cuena dijo: 'yo recibí el dinero en la oficina del Sr. Arcelay en presencia de los tres me ha dado el dinero y yo firmé la escritura de venta.' (página 146 del récord). Al preguntarle si vendió a Arcelay con alguna restricción o condición, contestó: 'nada, sin ninguna restricción'. (Récord página 146). Al preguntarle el abogado del demandado: '¿Pero si sabe que estaba presente el Lic. Fernández Cuyar y el Sr. Arcelay cuando usted recibió el dinero?' Contestó: 'Sí, señor'. (Récord página 133). Más adelante dijo el testigo: 'Yo nunca he llevado negocios de transacciones de dinero, de transacciones de dinero con ese señor, ni con Ramón ni con Antonio; no he hecho nunca transacción de dinero'. (Récord página 132).

Al preguntarle, '¿Por qué? ¿Por qué se la traspasó usted a don Rafael Arcelay?' Contestó: 'Porque recibí en la oficina el dinero, me entiende, en presencia del abogado, los Arcelay y el Sr. Don Antonio Vélez Alvarado'. (Récord página 118). El abogado Ortiz Toro después de grandes esfuerzos porque el testigo dijera quien le entregó el dinero, le hizo la siguiente pregunta directa: '¿Don Antonio Vélez Alvarado le pagó a usted ese dinero'? El testigo contestó: 'Puede haber sido Don Ramón y puede haber sido Arcelay, por que ésa es una cuestión . . . en el momento de hacerse'. (Récord página 101).

Es evidente que este testigo Félix del Llano González tenía un fuerte impedimento para hacer afirmaciones categóricas. Su forma contradictoria de decir quién le entregó el dinero, por ser hecho esencial en este caso, a los fines de claramente resolver, si Arcelay hizo un préstamo a Antonio Vélez Alvarado o si simplemente pagó el precio de una compra sin restricción alguna, no ayuda en nada al juzgador.

La alegación que hay sobre posibles entendidos entre Arcelay y Antonio Vélez Alvarado, en su carácter de apoderado de Ramón Vélez Alvarado, para que Arcelay devolviese la finca a Antonio Vélez Alvarado al pagarle éste su alegado préstamo con sus intereses, no se puede establecer con este testigo. Otro testigo directo de la transacción alegada sería Antonio Vélez Alvarado, y ese testigo no declaró. Arcelay quien declaró mediante deposición que es el Exhibit 1 del demandado, por haber fallecido, niega enfáticamente esa versión del alegado préstamo. El demandante ha aportado además una serie de pruebas circunstanciales para corroborar su alegación.

Félix del Llano González aparece firmando con fecha 31 de diciembre de 1934, lo que aseguró era una liquidación que hizo para entregar a Antonio Vélez Alvarado al éste entregarle la suma de $4,170.19. Esa suma, de acuerdo con esa liquidación, es el total que se le adeudaba a Del Llano González por concepto de lo pagado en el remate, las contribuciones pagadas por él mientras fué dueño de la finca y más los intereses al 12% anual sobre todas esas cantidades por el tiempo correspondiente. Notamos que en esa liquidación que arrojó exactamente la suma de $4,170.19, que fué lo que declara Félix del Llano González recibió al pasar la finca a Rafael Arcelay, se incluyen las contribuciones correspondientes a los años 1930–31 y 1931–32 que

ya estaban comprendidas en la suma de $1,573.84 que adeudaba la finca por concepto de contribuciones hasta el mismo momento de la subasta. Evidentemente la liquidación revela un error de cómputo que al restar los intereses calculados sobre esos pagos que Félix del Llano González no hizo dan una suma menor que sería a la que tendría derecho Félix del Llano González reclamar.

El demandante Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado en el hecho décimo de su demanda en el caso R-3443 alega que para el mes de mayo de 1940, él estaba adeudando a Rafael Arcelay una suma de alrededor de $12,000.00, por concepto de capital e intereses con motivo de los préstamos a que se ha referido en su demanda y que eran en relación con el total de las fincas puestas a nombre de Rafael Arcelay. Esas fincas al agruparse en la escritura #23 de 20 de mayo de 1940 arrojaron una cabida total de 569.65 cuerdas. ¿Si Arcelay le había prestado a Ramón Vélez Alvarado, por conducto de su apoderado en diversos préstamos la suma de alrededor de $12,000.00 y esa fué la razón por la cual se le pusieron, según alega el demandante, las diferentes fincas a su nombre en el entendido de que el traspaso era nominal; ¿por qué Antonio Vélez Alvarado en 19 de junio de 1939 hizo una solicitud de préstamo por la suma de $12,000.00 al Federal Bank Land? Según esa solicitud $10,000.00 los dedicaría a comprar o readquirir la finca de 378 cuerdas que le había sido rematada. ¿Y el resto de las fincas que se le habían puesto a nombre de Rafael Arcelay bajo el mismo entendido no se iban a readquirir? ¿Por qué se iba a pagar a la Sra. Arcelay $10,000.00 por la finca de 378 cuerdas, cuando ella había pagado solamente $4,170.19 y la había poseído desde el 10 de enero de 1935 al 20 de mayo de 1940, cinco (5) años y cuatro (4) meses? Si la Sra. Arcelay le cobraba el 7% sobre los préstamos que le había hecho a Ramón Vélez Alvarado, la suma a pagar por esa finca de 378 cuerdas sería: (1) $4,170.19 que niega Félix del Llano González era el monto de su crédito más intereses sobre esa cantidad al 7% por cinco (5) años que dan un total de $1,459.57 y (2) las contribuciones pagadas por todas esas fincas aproximadamente $425.00 en cinco (5) años con sus intereses para un total de $2,571.25 que dan un gran total de $8,201.01. Antonio Vélez Alvarado sin embargo en la soli-

citud de préstamo estaba dispuesto a pagar $10,000.00 para adquirir únicamente la finca de 378 cuerdas. Los restantes $2,000.00 del préstamo solicitado lo iba a invertir, según declaró bajo juramento, en mejoras y equipo para la finca. En la solicitud de préstamo ninguna información se da en relación con las otras fincas. En la parte correspondiente a gravámenes y deudas del solicitante, tan poco se hace alusión a deuda alguna del solicitante con Consuelo Cabinero de Arcelay.

La parte demandante se opuso fuertemente a la solicitud de la demandada para que la Corte restituyera a su calendario el caso R-1618. Se opuso también a la consolidación de los tres casos R-3443, R-3381 y R-1618. El caso R-1618 es una acción que inicia directamente Antonio Vélez Alvarado contra el mismo demandado del caso R-3443. En ese caso R-1618 Antonio Vélez Alvarado alega que la finca que se describe en el hecho noveno de la demanda del caso R-3443 y que tiene una cabida de 569.65 cuerdas era de su propiedad. Sin duda alguna, esa afirmación de Antonio Vélez Alvarado en el caso R-1618 no es correcta. Hay necesidad para la justa determinación de este caso, en que parte de la prueba es de naturaleza circunstancial, de calibrar la veracidad del mandatorio que representa el demandante Ramón Vélez Alvarado. ¿Por qué tenía que alegar Antonio Vélez Alvarado en 19 de marzo de 1945 que la finca de 569.65 cuerdas era de su propiedad, para poco más de un año después representando a su poderdante, alegar que esa misma finca era propiedad de Ramón Vélez Alvarado? ¿Por qué tenía Antonio Vélez que alegar en el caso R-1618 que estando en necesidad de dinero hizo un préstamo a Félix del Llano González poniéndole en garantía la finca y que luego él, Antonio Vélez Alvarado y Félix del Llano González convinieron que el último rematara la finca por falta de pago de contribuciones, cuando esa versión no es la misma que se da en el caso R-3443? Ya Félix del Llano González ha sostenido que nunca tuvo transacción de dinero ni con Antonio ni con Ramón Vélez Alvarado. ¿Por qué Antonio Vélez Alvarado alega en el caso R-1618 que el demandado Juan Ramón Ramos le decía que Arcelay podía morirse y que él, Juan Ramón Ramos podía pagarle su deuda con Arcelay siempre que le pusieran las fincas a su nombre, con el entendido de que Juan Ramón Ramos se las devolvería cuando Antonio Vélez Alvarado le pagase los $12,000.00, cuando en el caso R-3443 nos ofrece

el mismo Antonio Vélez Alvarado una versión diferente e introduce en la transacción al personaje de Orestes Ramos? A nuestro juicio hay una honda contradicción en las alegaciones de los casos R-1618 y R-3443. Esas alegaciones son hechas por la misma persona: Antonio Vélez Alvarado.

Antonio Vélez Alvarado consignó su última voluntad en dos testamentos otorgados, el primero por la escritura #34 de 14 de mayo de 1941 en la ciudad de Arecibo ante el Notario Isaías M. Crespo y el segundo por la escritura #12 de 20 de mayo de 1945 en la ciudad de San Juan ante el Notario Arturo Ortiz Toro. En el primer testamento el testador alega ser dueño de la finca 'El Recurso' de más de 600 cuerdas en el Barrio Cotto Norte de Manatí. Declara además, que esa finca está a nombre de Juan Ramón Ramos porque el testador le adeuda la suma de $12,000.00 aproximadamente. En el segundo testamento, cuando ya se habían establecido las demandas de los casos R-1618 y R-3443, nada dice con relación a la finca 'El Recurso'. El testador en ese segundo testamento repudia su testamento anterior. Resulta interesante que cuando el testador tenía cinco (5) años más de edad y por tanto estaba más cerca de su fin repudió esa declaración de ser dueño de la finca 'El Recurso'. Se puede argumentar que como ya tenía radicadas las demandas no era necesario insistir en la declaración testamentaria. Ni en uno ni en otro caso la finca 'El Recurso' era de su propiedad.

El testigo Oreste Ramos aparece mencionado por primera vez en relación con la transacción entre Antonio Vélez Alvarado y Juan Ramón Ramos del caso R-3443. En el caso R-1618 la transacción era de otra manera. Se ofreció en evidencia unos proyectos de escrituras como redactadas por el Notario Francisco Alvarado Jr. de una alegada transacción en relación con la finca de este caso entre Antonio Vélez Alvarado y Orestes Ramos. Se alega que la transacción no se realizó por razón de que el Notario Francisco Alvarado Jr. era yerno de Rafael Arcelay y no podía autorizar los documentos. Realmente no damos crédito a esa prueba documental porque evidentemente se hace difícil aceptar que un notario redacte proyectos de escrituras en transacciones donde está envuelta su padre político. Ya Rafael Arcelay en su declaración ha negado que hubiera tenido transacción alguna en relación con esta finca con Orestes

Ramos y también ha negado que su yerno Francisco Alvarado Jr. hubiese redactado los proyectos de escrituras que se le imputan haber redactado. Si la alegada transacción entre Antonio Vélez Alvarado y Orestes Ramos hubiera llegado al punto de haberse redactado las escrituras y hasta haberse estampado iniciales en los originales de algunas de ellas, fácil hubiera sido corregir la ignorancia del notario con simplemente redactar la primera plana de cada una de las escrituras, sobre todo cuando está en blanco la fecha de otorgamiento.

De los documentos que hemos tenido a la vista presentados por las partes parece que la finca de este caso luego de ser mensurada por los ingenieros y agrimensores de la Autoridad de Tierras de Puerto Rico arrojó una cabida de únicamente 341.8981 cuerdas. Esa mensura se practicó en 17 de febrero de 1945. La Autoridad de Tierras tasó esa finca en el 1946 dándole un valor de $21,410.63. Según esa tasación la finca tenía 110 cuerdas que valen a $5.00 cuerda y solamente tiene 7.12 cuerdas que valen $160.00 cuerda y 12.7541 cuerdas que valen a $150.00.

La parte demandante ofreció gran número de documentos en evidencia para establecer que los demandantes cultivaban caña en las fincas que alegan poseían. No hay duda que en dichas fincas existió cultivo de caña, frutos menores, pastos naturales, además de malezas. Para el 1928, según se desprende del Exhibit 28 de los demandantes, existían cañas en cultivo por un total de 70 cuerdas. Desde entonces empezaron a declinar las siembras y ya para el 19 de junio de 1939 el propio Antonio Vélez Alvarado informaba en su solicitud de préstamo al Banco Federal y bajo juramento, que tenía 30 cuerdas de caña bajo cultivo. En 1948 solamente restaban a los demandantes siembra de caña por un total de 5 cuerdas. El tasador de la Autoridad de Tierras tasó las cañas de esas 5 cuerdas, de las cuales 1.9 cuerdas eran cañas de 5 cortes y 3.1 cañas de un solo corte, en la cantidad total de $61.70. Esa tasación se debe al cultivo deficiente y falta de aplicación de los abonos necesarios oportunamente.

También la parte demandante ofreció en evidencia el Exhibit número 23 que es un contrato firmado entre Antonio Vélez Alvarado y el Alcalde del Municipio de Manatí con fecha 7 de enero de 1933. Ese contrato es relativo a la autorización de

Antonio Vélez Alvarado dada al Municipio de Manatí para usar un sitio en su finca para echar la basura de dicho municipio. El contrato se hace por un año y no aparece prueba adicional de que dicho contrato estuviese en vigor para la fecha en que el demandado Juan Ramón Ramos adquirió las fincas de este caso.

La prueba de los demandantes y especialmente las alegaciones de la demanda están encaminadas a demostrar que existe buena amistad entre los esposos Arcelay y el apoderado del demandante Antonio Vélez Alvarado y su esposa Cora Ramos. Así lo declara Félix del Llano González cuando dijo en su declaración dada ante el Juez Lens Cuena a la página 103 que al pagarle Antonio Vélez Alvarado le había manifestado que Arcelay y él eran como familia. Si eso era así y no hay prueba otra alguna que tienda a señalar a Rafael Arcelay como enemigo de Vélez Alvarado y su esposa, ni con propósitos de exagerado lucro no comprendemos cómo es posible que Rafael Arcelay en su declaración niegue en la forma más enfática las alegaciones en que se funda la demanda del caso R-3443, y los testimonios de esos testigos. Arcelay declaró que había llegado al extremo de denunciar a Antonio Vélez Alvarado y su esposa, quienes eran sus amigos, por haber éstos ordenado cortar unos espeques de la finca que había comprado a Félix del Llano González, sin su permiso y que la denuncia podía buscarse en la Corte Municipal de Manatí.

Los demandantes pudieron haber refutado ese hecho, si es que no era cierto, trayendo una certificación negativa del Tribunal Municipal de Manatí a tal efecto. ¿Es concebible acaso que un hombre que ha permitido que se le ponga nominalmente a su nombre una finca para garantía de un préstamo que ha hecho, proceda a actuar en esa forma? Si Antonio Vélez Alvarado y su poderdante eran los dueños de la finca en realidad no es posible pensar que Rafael Arcelay procediera tan drásticamente.

Los testigos que alegan haber oído a Juan Ramón Ramos tratar con Antonio Vélez Alvarado en la casa de éste sobre el negocio que finalmente se hizo traspasándole Vélez Alvarado la finca a cambio del pago de los $12,000.00 por Juan Ramón Ramos a Rafael Arcelay son personas familiarmente relacio-

nadas con la esposa del demandante y resultan haber oído versiones distintas en relación con esas conversaciones.

Hay prueba de que el promedio por cuerda de caña en estas fincas era de 20 toneladas con buen cultivo. También hay prueba de que Antonio Vélez Alvarado carecía de medios económicos para cultivar adecuadamente la pequeña siembra de caña que tenía. También se estableció por la prueba que no era un requisito ser dueño de la finca en que se producía la caña. El abogado de los demandantes puso gran énfasis en conseguir que Rafael Arcelay declara [*sic*] si alguna vez había firmado algún contrato con Antonio Vélez Alvarado de arrendamiento, y Arcelay rotundamente negó haber hecho contrato alguno y sostuvo que si lo había, él no lo había firmado. La parte demandante no insistió en este extremo y quedó en el récord ese hecho sin rebatir por los demandantes. Arcelay declaró que había permitido a Antonio Vélez Alvarado continuar residiendo en la casa que había usado por tanto tiempo y que le había permitido cultivar unos pequeños predios de cañas y frutos menores.

El testigo Arturo Centeno Martell declaró el ·día 12 de marzo de 1959. Dijo que había inspeccionado la finca Cotto Norte en compañía del Lic. Arturo Ortiz Toro siete u ocho años antes de la fecha en que declararon y que no habían visto caña sembrada. Hay prueba, sin embargo, aportada por la parte demandante, (Exh. 17) de que en el 1953 todavía Antonio Vélez Alvarado y su esposa Cora Ramos seguían cultivando los pequeños predios de cañas que Arcelay primero y el demandado después le autorizaron a cultivar. Angel Ramos declaró que Arcelay le dijo que era cierto lo que decía Antonio Vélez Alvarado de que él, Antonio Vélez Alvarado, le debía un dinero a Arcelay de unas contribuciones. Ésa sería una manifestación contra interés del propio Arcelay, pero Rafael Arcelay ha declarado también (Exh. 1 ddo.) que de haberle hecho préstamos a Antonio Vélez Alvarado éste, que era un hombre inteligente, le habría hecho una hipoteca que le garantizara su dinero. Sin duda alguna, por los documentos ofrecidos en evidencia por la parte demandante Antonio Vélez Alvarado, era, en realidad un hombre inteligente y aunque de avanzada edad no hay prueba de que estuviese decrépito. Damos entero crédito a la versión que da Arcelay, porque la misma guarda más lógica con las circunstancias que contribuyen a esclarecer la verdad en este caso. El testimonio del Lic. Joaquín Velilla tam-

bién revela una falla que desarmoniza en el conjunto de la prueba. Nos dice el testigo Velilla que Arcelay le dijo que había obtenido la finca que iba a vender a Orestes Ramos en un remate por contribuciones y que quería solamente el capital sin intereses. Por el récord de este caso se revela que Félix del Llano González obtuvo por remate de contribuciones la finca de 378 cuerdas que se alega Arcelay iba a venderle a Orestes Ramos. Arcelay la adquirió por compra que hiciera a Félix del Llano González quien fué el que verdaderamente las remató. En segundo lugar a través de toda su declaración Arcelay deja ver tener interés en que su dinero le produzca. Nos ha dicho Rafael Arcelay que si le hubiera prestado a Antonio Vélez Alvarado, éste le hubiera tenido que garantizar con una hipoteca. El mismo demandante en su demanda alega que pagaba intereses.

Los Exhibits 12, 13 y 14 del demandante son, el 12 y el 14 copias de alegadas escrituras originales redactadas por el Notario Francisco Alvarado Jr., y el Exhibit 13 es el original de escritura también alegadamente redactada por el Notario Francisco Alvarado Jr. Tanto en las copias (Exhs. 12 y 14) como en el proyecto original de escritura (Exh. 14) las partes son los esposos Arcelay y Orestes Ramos. Por virtud del Exhibit 12, copia de la proyectada escritura #13 del referido notario los esposos Arcelay aparecen venderle a Orestes Ramos las fincas descritas bajo las letras A, B, C, D, E y F. El original de este Exhibit 12 no lo presentó la parte demandante. Se identifica, sin embargo, (Identificación 2 dte.) un original de una proyectada escritura con igual número (3) de la que semeja ser copia el Exhibit 12 de los demandantes. Cotejada cuidadosamente no resulta ser copia. La realidad es que tanto el Exhibit 12 del demandante como la Identificación 2 del demandante alegadamente fueron redactadas por el Notario Francisco Alvarado Jr. y resulta que en el Exhibit 12 los comparecientes son los esposos Arcelay y Orestes Ramos, mientras que en la Identificación 2 del demandante los comparecientes son los esposos Arcelay y Antonio Vélez Alvarado. El Exhibit 13 del demandante es un proyecto original de escritura redactado por el Notario Francisco Alvarado Jr., donde los comparecientes son los esposos Arcelay y Orestes Ramos. La Identificación 1 del demandante es otro proyecto original de escritura redactado por el Notario Francisco Alvarado Jr. en donde los compare-

cientes son los esposos Arcelay y Antonio Vélez Alvarado. El Exhibit 14 del demandante es una copia del proyecto de escritura #5 redactado por Francisco Alvarado Jr., muy similar en redacción a la Identificación 3 de los demandantes que es un proyecto de escritura #5 también redactado por Francisco Alvarado Jr. En el Exhibit 14 los comparecientes son los esposos Arcelay y Orestes Ramos mientras que en la Identificación 3 los comparecientes son los esposos Arcelay y Antonio Vélez Alvarado. Sin duda alguna el Notario Francisco Alvarado Jr. trabajó doblemente e inútilmente haciendo todos estos trabajos.

Toda la prueba en este caso es en el sentido de que la venta de la finca Cotto Norte se hizo de los esposos Arcelay al demandado Juan Ramón Ramos en 20 de mayo de 1940. Todas las alegadas gestiones del demandado para convencer a Antonio Vélez Alvarado tuvieron que efectuarse con anterioridad a esa fecha. Paulino Castro Abalofia, sin embargo, nos declara que fué acompañando a Antonio Vélez Alvarado a casa de Rafael Arcelay en Hato Rey y que al llegar estaba allí Juan Ramón Ramos; que Juan Ramón Ramos y Antonio Vélez Alvarado hablaron sobre el préstamo diciendo Juan Ramón Ramos que estaba dispuesto a prestarle el dinero a Antonio Vélez Alvarado si él ponía las fincas a su nombre. Todo eso ocurrió, según recordación de Paulino Castro Abalofia como al principio de 1942. La recordación de este testigo deja mucho que desear. Declaró que se habló allí de un préstamo original de $4,000.00 y otras cantidades que Antonio Vélez Alvarado le iba tomando a Arcelay.

Cora Ramos viuda de Antonio Vélez Alvarado declaró que en el 1939 Arcelay le dijo a su esposo que gestionara el dinero para que cogiera la propiedad y que Antonio Vélez Alvarado empezó a buscar dinero para adquirir la finca; que fué a San Juan y no le dieron el dinero. Con esto la testigo corrobora lo dicho por Rafael Arcelay de que le había ofrecido la finca a Antonio Vélez Alvarado. Dice también la testigo que Juan Ramón Ramos les dijo que se quedaran en la finca. Con esto corrobora la testigo a Rafael Arcelay y al demandado quienes declararon que habían consentido en que Antonio Vélez Alvarado permaneciera en la finca. También declaró que Antonio Vélez Alvarado le pagaba a Juan Ramón Ramos $70.00 de intereses. En el hecho decimotercero de la demanda del caso

R-3443 se alega que el demandante pagó los intereses de los tres primeros meses, pero que luego dejó de pagar porque el demandado comenzó a introducirse en la finca y detentó la posesión de la misma.

En el hecho cuarto de la demanda del caso R-1618 dice el mismo Antonio Vélez Alvarado que como apoderado de Ramón Vélez Alvarado, demanda en el caso R-3443, que 'siendo condición de que por los intereses, el demandado tomaría posesión de la finca, excepto una parcela de unas 80 cuerdas aproximadamente que tiene el demandante bajo cultivo de cañas y otros productos'. ¿En cuáles de ambas versiones se dice la verdad? En la demanda del caso R-1618 el demandado toma posesión de la finca con consentimiento de Antonio Vélez Alvarado, en la demanda del caso R-3443 el demandado usurpa y detenta la posesión. ¿Por qué si es cierto que a los tres meses del demandado usurpar y detentar la posesión de la finca rompiendo con ello el convenio efectuado con el demandante demostrando desde tan temprano su ambición de quedarse con la finca, no se trajo la acción del caso R-1618 inmediatamente alegándose la verdad? ¿Por qué se pidió el archivo de ese caso R-1618 y se radicó poco más de un año más tarde el caso R-3443 con una alegación distinta en cuanto a la forma en que entró el demandado en posesión de la finca?

Vistas las conclusiones de hechos y todo lo demás arriba expuesto, el Tribunal llega a las siguientes:

### CONCLUSIONES DE DERECHO

1. Que la venta que hizo Félix del Llano González a los esposos Arcelay fué una transacción en virtud de la cual traspasó a éstos título absoluto a la finca de 378 cuerdas siendo dicho título debidamente inscrito en el registro a nombre de los esposos Arcelay.

2. Que las distintas transacciones realizadas por el demandante Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado con los esposos Arcelay fueron contratos de compra venta en virtud de los cuales los compradores obtuvieron título absoluto a dichas fincas inscribiendo las mismas a su nombre en el registro.

3. Que habiéndose reducido considerablemente la cabida de la finca según ésta fué agrupada en la escritura #23 de 20 de

mayo de 1940, y habiéndose iniciado el aumento de los valores de los terrenos en Puerto Rico después del año 1940 el precio pagado por el demandado Juan Ramón Ramos por la finca que compró en virtud de la escritura #23 de mayo de 1940 era uno justo y razonable.

4. Que no hubo ningún Fideicomiso Expreso concertado por el demandado con el demandante a través de su apoderado Antonio Vélez Alvarado, en virtud de lo cual el demandado Juan Ramón Ramos se comprometiese y viniese obligado en cumplimiento de su compromiso a restituir al demandante Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado las fincas que había adquirido a virtud de título absoluto de compra.

5. Que el demandado entró en posesión y dominio legítimos de la finca comprada a virtud de título válido que adquirió de los esposos Arcelay y desde el momento mismo en que la compra se perfeccionó.

6. Que aun cuando hubiera sido cierto que existió el convenio por parte de los esposos Arcelay o de los esposos demandados de restituir las fincas a su alegado dueño Ramón Vélez Alvarado por conducto de su apoderado Antonio Vélez Alvarado la acción para recuperar las fincas vendidas había prescrito a la fecha en que se radicó la demanda del caso R-3443.

7. Que también hubiera estado prescrita la acción contra los esposos Arcelay o contra los esposos demandados si las transacciones alegadas por el demandante en el caso R-3443 hubieran constituído un Fideicomiso Expreso." (Autos orig., págs. 335–357).

Sostiene la parte recurrente que en este caso nunca se consumó una venta válida entre los esposos Arcelay-Cabinero y los demandados, por cuanto la adquisición de la propiedad por parte de los esposos Arcelay-Cabinero no era de carácter absoluta y legal y agregan que la transmisión del título a los Arcelay-Cabinero fue tan sólo una forma de garantizar los Vélez Alvarado la deuda que ellos contraían con los Arcelay-Cabinero por éstos adelantar el dinero a pagarse a Del Llano. "A toda la prueba presentada," argumentan, "le resulta de aplicación los principios jurídicos consagrados por esta Supe-

rioridad en los casos de *Fernández* v. *Laloma*, 56 D.P.R. 367; *Rodríguez* v. *Rivera*, 71 D.P.R. 290; *Monrozeau* v. *Amador*, 40 D.P.R. 132; *Ramírez* v. *Ramírez*, 65 D.P.R. 544; *Nieto* v. *Torres*, 56 D.P.R. 154 y *Rivera* v. *Goitía*, 70 D.P.R. 30."

Examinemos estos casos.

*Fernández* v. *Laloma*, supra.

En este caso a solicitud de la demandada, se dictó sentencia por las alegaciones. Las alegaciones de la demanda fueron aceptadas como ciertas. De acuerdo con esas alegaciones Miguel Echevarría Navarro tomó a préstamo de Carmen Fernández Látimer la suma de $4,200 para comprarle una casa al Sr. Waldemar E. Lee. Según el convenio, el título figuraría a nombre de una hermana del deudor llamada Josefa Echevarría Navarro hasta que aquél pagara el importe del préstamo. Si pagaban, su hermana le pasaría el título de la casa a él. Si no podía pagar el precio de la compraventa entonces Josefa Echevarría Navarro le pasaría el título a la acreedora Sra. Carmen Fernández Látimer. El dominio pleno de la propiedad se inscribió en el Registro de la Propiedad a nombre de Josefa Echevarría.

Miguel Echevarría murió en estado de insolvencia sin haber pagado los $4,200. La dueña nominal Josefa Echevarría también falleció pero había hecho un segundo testamento designando como única heredera a la demandada Frances Laloma. En la demanda se había alegado que Frances Laloma tenía conocimiento de que su causante nunca había sido dueña de la propiedad. Se resuelve que Josefa Echevarría y sus cesionarios fueron agentes tanto de la acreedora como del deudor del préstamo y que al transmitir la finca a heredera instituida en el testamento, traspasó los límites del mandato.

*Rodríguez* v. *Rivera*, 71 D.P.R. 290.

Se otorgó una escritura de venta con pacto de retro. La vendedora quedó en la posesión ininterrumpida de la finca.

Por un posterior adquirente se trató de desahuciarla. Se resolvió que la transacción no había sido una de venta y sí de préstamo con hipoteca por lo que siendo la demandada la dueña de la finca no procedía el desahucio. Las transacciones se inscribieron en el registro. El demandante no destruyó la presunción *juris tantum* que establece el Art. 1410 del Código Civil.

*Rivera* v. *Goitía*, supra.

En pago de honorarios de abogado, la sucesión de José Goitía Alicea convino verbalmente con el abogado que le darían un condominio de una mitad en una finca de 10.36 cuerdas. Posteriormente José Goitía, a nombre de quien figuraba inscrita la finca, la traspasó a su hermano Flor Goitía. Al resolver el conflicto de la prueba en cuanto a la naturaleza de esta venta, el tribunal sentenciador falló que dicha venta había sido fraudulenta y simulada. En apelación se confirmó la sentencia.

*Ramírez* v. *Ramírez*, supra.

Se traspasaron dos fincas a nombre del esposo de doña Diluvina Ramírez Morales a solicitud de ésta. El traspaso se hizo en pago de haberes hereditarios de dicha señora. Se estimó probado que su esposo aceptó y poseyó el título sobre las fincas en calidad de fiduciario para beneficio de su esposa. De sostenerse que dichas fincas pertenecían a la sociedad de gananciales se estaría sancionando un enriquecimiento injusto a expensas de la demandante.

Se resolvió el caso bajo la doctrina de la existencia de un fideicomiso constructivo o resultante y de la del enriquecimiento injusto.

*Nieto* v. *Torres*, supra.

Se otorgó escritura de venta de una finca para garantizar un préstamo. El vendedor continuó en la posesión y disfrute de la propiedad vendida. La corte no permitió prueba para

demostrar la verdadera naturaleza de la transacción. Se revocó la sentencia que declaraba con lugar la demanda interpuesta por el comprador y se devolvió el caso para ulteriores procedimientos.

*Monrozeau* v. *Amador*, supra.

El tribunal inferior consideró como hipoteca en garantía de un préstamo, el documento privado que poseían los demandados en virtud del cual se le traspasaba la propiedad con pacto de retro.

La dificultad con que se confrontan los planteamientos hechos por los recurrentes consiste en que las determinaciones de hecho del tribunal sentenciador están suficiente y sustancialmente sostenidas por la evidencia admitida y conforme a las mismas los esposos Arcelay-Cabinero no eran mandatarios de Antonio Vélez Alvarado, ni adquirieron los bienes en litigio en fideicomiso, ni hubo un enriquecimiento injusto o sin causa por parte de Juan Ramón Ramos. Los hechos probados son los que determinan cuál es la ley y la doctrina jurisprudencial aplicables. Considerando, por tanto, los hechos probados en este caso, no podemos aplicar a los mismos las doctrinas invocadas por los recurrentes.

*En su consecuencia la sentencia dictada por el Tribunal Superior, será confirmada.*